678 S.E.2d 778 (2009)
In the Matter of D.B.J.
No. COA09-320.
Court of Appeals of North Carolina.
July 7, 2009.
*779 James N. Freeman, Jr. for Yadkin County Department of Social Services, Elkin, Petitioner-Appellee.
Robert W. Ewing, Winston-Salem, for Respondent-Appellant.
Pamela Newell Williams, Raleigh, for Guardian Ad Litem.
BEASLEY, Judge.
Respondent is the father of D.B.J., a child born of a relationship between Respondent and the child's mother (Mother). D.B.J. is the youngest of Mother's three children. D.B.J.'s maternal half siblings are a brother (Brother) and a sister (Sister). All three of Mother's children were adjudicated neglected. Sister was additionally adjudicated abused. Respondent appeals from the adjudication of neglect for D.B.J. We affirm.
On 2 April 2008 Sister's father brought her to the emergency room at Baptist Hospital in Winston-Salem for examination and treatment of marks and bruises he observed on her body. The attending physician noted multiple adult-sized bite marks, which were covered in blue dye, on the child's arms. A nurse took photographs of the marks. The nurse also observed bruising on the child's forehead and an abrasion on her chin. Hospital personnel reported suspected child abuse to the Yadkin County Department of Social Services (Petitioner). On 4 April 2008 Petitioner filed a juvenile petition alleging that the three children were abused and neglected juveniles. Petitioner also obtained nonsecure custody of the three children.
At the adjudication hearing, the trial court made several findings of fact regarding the prior history of Mother and her two oldest children with Petitioner. In October 2006 the trial court adjudicated Brother and Sister abused and neglected due to numerous unexplained fractures of Sister's arms and collarbone. Sister was four months old at the time. On 14 January 2008, after sixteen months of placement out of Mother's home, the two older children were returned to her custody.
Shortly thereafter, on 19 January 2008, two Jonesville Police Department officers traveled to Mother's home in response to a 911 call made by the children. The officers encountered Mother, who was belligerent. On 19 March 2008 Jonesville Police Department Officer Chuck Puckett responded to a subsequent 911 call made from Mother's residence. Officer Puckett observed that Mother *780 had facial and neck injuries purportedly inflicted by Respondent in the presence of D.B.J. and Sister.
On the evening of 19 March 2008, an officer of the Elkin Police Department stopped a vehicle that had pulled out of the parking lot of the Elkin Creek Bar and Grill into the path of his vehicle. The officer spoke to the operator of the vehicle, whom he identified as Mother, and observed that she had red glassy eyes and slurred speech. Mother also performed poorly on field sobriety tests. The officer arrested Mother for driving while impaired.
The following day Mother obtained a domestic violence protective order against Respondent. Notwithstanding the order, Mother continued to communicate, associate and visit with Respondent. Mother's physician refused to prescribe any pain medications for Mother based on her observations of Mother's behavior, which in the physician's opinion, was indicative of "drug seeking behavior."
After Sister was seen in the emergency room of Baptist Hospital on 2 April 2008, she was examined by Dr. Sara Sinal, who concluded that the red marks on Sister's chin were "grab" marks and curved marks on her right arm were bite marks. Dr. Sinal suspected physical abuse.
The trial court concluded that D.B.J. and Brother are neglected juveniles pursuant to N.C. Gen.Stat. § 7B-101 in that D.B.J. has been in the midst of domestic violence, Mother has not distanced herself from the perpetrator of the domestic violence, and D.B.J. and Brother reside in a home where Sister has been physically abused. The trial court adjudicated D.B.J. and Brother neglected and Sister as both neglected and abused.
Review of a trial court's adjudication of neglect requires an examination of (1) the findings of fact which must be supported by clear and convincing evidence, and (2) the conclusions of law which must be supported by the findings of fact. In re Gleisner, 141 N.C.App. 475, 480, 539 S.E.2d 362, 365 (2000). Respondent does not challenge the findings of fact; consequently they are presumed supported by evidence and are binding. See Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Respondent argues that the findings of fact do not support the conclusion of law that D.B.J. is a neglected juvenile. Respondent further argues that the findings of fact do not demonstrate any impairment or substantial risk of impairment as a result of D.B.J.'s parents' actions, that D.B.J.'s sibling was subjected to physical abuse by an adult who regularly lives in her home, or that D.B.J. was abused or that there was a substantial risk of abuse to D.B.J. based on the prior abuse of the sibling.
A neglected juvenile is defined by N.C. Gen.Stat. § 7B-101(15) (2007) as one
who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
"[T]his Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." In re Safriet, 112 N.C.App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (internal quotations omitted). In determining whether a child is neglected based upon the abuse or neglect of a sibling, "the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean, 135 N.C.App. 387, 396, 521 S.E.2d 121, 127 (1999). "It is well-established that the trial court need not wait for actual harm to occur to the child if there is a substantial risk of harm to the child in the home." In re T.S., III & S.M., 178 N.C.App. *781 110, 113, 631 S.E.2d 19, 22 (2006), aff'd per curiam on other ground, 361 N.C. 231, 641 S.E.2d 302 (2007). "[S]evere or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile" may include alcohol or substance abuse by the parent, driving while impaired with a child as a passenger, or physical abuse or injury to a child inflicted by the parent. In re Stumbo, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003). Other conduct that supports a conclusion that a child is neglected includes exposing the child to acts of domestic violence, abuse of illegal substances, and threatening or abusive behavior toward social workers and police officers in the presence of the children. In re T.S., 178 N.C.App. at 114, 631 S.E.2d at 22-23.
Here, the trial court's findings of fact show that "another juvenile had been subjected to abuse [and] neglect by an adult who regularly lives in the home" in that D.B.J.'s sister had been physically abused and had sustained injuries including "marks on her left eye, right forehead, chin, both legs, both arms, both shoulders, groin and lower back... and extensive diaper rash, dark blue dye covering her bottom and legs and curved marks on her right arm ..., grab marks [and] bite marks" by non-accidental means. The trial court also found that D.B.J.'s parents engaged in acts of domestic violence in D.B.J.'s presence, resulting in physical injury to Mother and personal property damage; that Mother was subsequently attacked by Respondent, after which she received a domestic violence protective order but never ceased contact with Respondent; and Mother has abused alcohol and/or controlled substances. The findings of fact support the trial court's conclusion that D.B.J. is a neglected juvenile.
The order is
Affirmed.
Judges HUNTER, JR. and ERVIN concur.