IN THE MATTER OF: A.S.Y.

No. COA10-631

(Filed 21 December 2010)

**Termination of Parental Rights— guardian ad litem for parent —required to be at termination hearing**

The trial court erred by terminating respondent mother's parental rights because it allowed her guardian *ad litem* (GAL) to withdraw at the beginning of the termination hearing. Since the GAL was appointed in accordance with N.C.G.S. § 7B-602 and N.C.G.S. § 1A-1, Rule 17, it was the duty of the GAL to act as a guardian of procedural due process for that parent, and to assist in explaining and executing her rights. Even in the absence of respondent, the GAL was still required to remain and represent

respondent to the fullest extent feasible during the hearing. The order was remanded for a new hearing.

Appeal by respondent-mother from order entered 17 February 2010 by Judge Page Vernon in Orange County District Court. Heard in the Court of Appeals 27 October 2010.

*No brief filed for petitioner-appellee Orange County Department of Social Services.*

*GAL Appellate Counsel Pamela Newell, for guardian ad litem.*

*Charlotte Gail Blake, for respondent-appellant mother.*

CALABRIA, Judge.

Respondent-mother appeals the trial court's order terminating her parental rights to her minor child, "Amanda."[1] We vacate the trial court's order and remand for a new termination hearing.

## I. Background

Respondent-mother is the biological mother of Amanda, who was born on 25 December 2007.[2] On 28 October 2008, respondent-mother, who was homeless, contacted the Orange County Department of Social Services ("DSS" or "petitioner") seeking assistance for Amanda and herself. On 29 October 2008, DSS filed a juvenile petition alleging that Amanda was a neglected and dependent juvenile because of respondent-mother's homelessness, lack of support system, and lack of employment. Petitioner assumed non-secure custody of Amanda the same day and Amanda was placed in foster care.

On 30 October 2008, at a non-secure custody hearing, respondent-mother initially waived her right to assistance of counsel. However, later in the hearing, the trial court appointed counsel and a guardian *ad litem* ("GAL") for respondent-mother. The trial court also continued non-secure custody of Amanda with DSS.

After a hearing on the neglect and dependency petition on 30 December 2008, the trial court entered an adjudication and disposition order on 23 January 2009, adjudicating Amanda as a neglected and dependent juvenile. The trial court also continued custody of Amanda with DSS and awarded respondent-mother weekly visita-

---

1. "Amanda" is a pseudonym used to protect the identity of the minor child.

2. R.H., Amanda's father, relinquished his parental rights on 21 January 2010 and is not a party to this appeal

tions. The trial court further ordered respondent-mother to undergo a full psychiatric and/or psychological evaluation and fully disclose to DSS her previous mental health treatment and evaluations. Respondent-mother appealed to this Court, and we affirmed the adjudication and disposition order. *In re A.Y.,* —— N.C. App. ——, 687 S.E.2d 541, 2009 N.C. App. LEXIS 1522, 2009 WL 2930773 (2009) (unpublished).

During the pendency of the appeal of the adjudication and disposition order, the trial court held a permanency planning hearing on 21 May 2009. By order entered 6 July 2009, the trial court found that respondent-mother had made "absolutely no progress on identifying goals or correcting any of the safety concerns in her life[,]" and that she had not "engaged in services, [wa]s actively refusing to take part in any case planning and [wa]s refusing to submit for a psychological or psychiatric evaluation as court ordered." The trial court also found that further efforts to reunify Amanda with respondent-mother would be futile or inconsistent with Amanda's best interests. Consequently, the trial court ordered the permanent plan for Amanda to be adoption, ceased respondent-mother's visitation with Amanda, relieved DSS of having to pursue efforts toward reunification, and directed DSS to file a motion to terminate respondent-mother's parental rights.

DSS filed a motion in the cause to terminate respondent-mother's parental rights to Amanda on 17 June 2009. The motion alleged that grounds existed to terminate respondent-mother's parental rights in that, due to respondent-mother's mental illness, Amanda was a neglected juvenile when she lived with respondent-mother. In addition, DSS alleged that respondent-mother appeared to be mentally ill, engaged in "bizarre behaviors," and had other "mental health impairments" which made her incapable of providing for the proper care and supervision of Amanda such that Amanda was a dependent juvenile. Respondent-mother filed an answer in response on 3 September 2009, generally denying petitioner's allegations.

The trial court conducted a hearing on the motion to terminate respondent-mother's parental rights on 21 January 2010. Respondent-mother did not appear at the hearing, and upon inquiry by the trial court, respondent-mother's attorney stated the following regarding her absence:

This case has a—long history. And I appreciate the opportunity to tell you that my client, ah, informed me of her objection, which

has been continuous, through the beginning of the case. And the appeal of the adjudication, that D.S.S. does not have jurisdiction over her. She contends that if she were to appear here, that that would give ju [sic], D.S.S. jurisdiction over her.

She has instructed me to assert that defense. And the general defense that they don't have sufficient—reason—from the beginning to have taken her child from her and, ah, I think it was November of last year.

Prior to the presentation of evidence at the hearing, Karen Murphy ("Ms. Murphy"), the GAL appointed to represent respondent-mother's interests in the juvenile case, asked to be released from the case. The trial court inquired of both parties' counsel if there were any objections to releasing Ms. Murphy and received none. As a result, the trial court relieved Ms. Murphy from further duties in the matter and continued conducting the hearing.

On 17 February 2010, the trial court entered an order terminating respondent-mother's parental rights to Amanda. The court concluded that grounds existed to terminate respondent-mother's parental rights in that Amanda was neglected and that there was a probable repetition of neglect if the juvenile were returned to respondent-mother's custody. The trial court also found that grounds existed to terminate respondent-mother's parental rights because she was incapable of providing for the proper care and supervision of Amanda such that Amanda was a dependent juvenile, and there was a reasonable probability that the incapability would continue for the foreseeable future. Respondent-mother appeals.

## II. Guardian *ad Litem*

Respondent-mother argues that the trial court erred in allowing her GAL to withdraw at the beginning of the termination hearing. We agree.

### A. Appointment of Ms. Murphy

Initially, we examine the procedure which led to the appointment of Ms. Murphy as respondent-mother's GAL. The Juvenile Code permits the trial court to appoint a GAL for a parent in both abuse, neglect or dependency proceedings and termination of parental rights proceedings. N.C. Gen. Stat. §§ 7B-602 and 7B-1101.1 (2009). In the instant case, the trial court appointed Ms. Murphy as GAL for respondent-mother in the first hearing after the neglect and

dependency proceeding was initiated by DSS. This appointment was governed by N.C. Gen. Stat. § 7B-602(c), whichstates:

> On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent in accordance with G.S. 1A-1, Rule 17, if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest. The parent's counsel shall not be appointed to serve as the guardian ad litem.

N.C. Gen. Stat. § 7B-602(c) (2009). Thus, although the trial court was not required to appoint a GAL for respondent-mother, it chose to do so in its discretion, based upon its belief that respondent-mother was either incompetent or had diminished capacity and thus could not adequately act in her own interest. Neither party contends that the appointment of Ms. Murphy was inappropriate.

Ms. Murphy continued to assist respondent-mother through Amanda's adjudication as a neglected and dependent juvenile and subsequent permanency planning hearings. DSS then filed its motion to terminate respondent-mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1102(a):

> (a) When the district court is exercising jurisdiction over a juvenile and the juvenile's parent in an abuse, neglect, or dependency proceeding, a person or agency specified in G.S. 7B-1103(a) may file in that proceeding a motion for termination of the parent's rights in relation to the juvenile.

N.C. Gen. Stat. § 7B-1102(a) (2009). The motion contained several allegations referencing respondent-mother's apparent mental illness and also referred to respondent-mother's bizarre behaviors and mental health impairments. Since this motion was filed as part of the original neglect and dependency action, Ms. Murphy's appointment pursuant to N.C. Gen. Stat. § 7B-602(c) was still in effect. As a result, Ms. Murphy continued to assist respondent-mother in preparation for the termination of parental rights hearing. However, when respondent-mother failed to appear at the termination hearing, Ms. Murphy was permitted to withdraw by the trial court. Respondent-mother contends that this was error.

### B. Duties of a GAL

This Court has struggled to define the role of a parent's GAL during a termination hearing. Prior to 2005, the only statutory refer-

ence to the duties of a GAL appointed for a parent in a termination proceeding were those applicable to all guardians *ad litem* appointed pursuant to Rule 17 of the Rules of Civil Procedure:

> Any guardian ad litem appointed for any party pursuant to any of the provisions of this rule shall file and serve such pleadings as may be required within the times specified by these rules, unless extension of time is obtained. After the appointment of a guardian ad litem under any provision of this rule and after the service and filing of such pleadings as may be required by such guardian ad litem, the court may proceed to final judgment, order or decree against any party so represented as effectually and in the same manner as if said party had been under no legal disability, had been ascertained and in being, and had been present in court after legal notice in the action in which such final judgment, order or decree is entered.

N.C. Gen. Stat. § 1A-1, Rule 17(e) (2009); *see also In re Shepard*, 162 N.C. App. 215, 227, 591 S.E.2d 1, 9 (2004). Considering Rule 17 and our Supreme Court's brief explanation of a GAL's role in *In re Montgomery*, 311 N.C. 101, 316 S.E.2d 246 (1984), this Court held that "Rule 17 and the case law addressing the duties of GALs assigned to alleged 'incapable' parents suggest the role of the GAL as a guardian of procedural due process for that parent, to assist in explaining and executing her rights." *Shepard*, 162 N.C. App. at 227, 591 S.E.2d at 9.

In 2005, the General Assembly revised the Juvenile Code, with the revisions applicable to petitions or actions filed on or after 1 October 2005. *See* 2005 N.C. Sess. Laws 398. The revised version of N.C. Gen. Stat. § 7B-602 provided a non-exclusive list of practices that may be performed by a GAL appointed under its provisions:

> (e) Guardians ad litem appointed under this section may engage in all of the following practices:
>
> (1) Helping the parent to enter consent orders, if appropriate.
>
> (2) Facilitating service of process on the parent.
>
> (3) Assuring that necessary pleadings are filed.
>
> (4) Assisting the parent and the parent's counsel, if requested by the parent's counsel, to ensure that the parent's procedural due process requirements are met.

N.C. Gen. Stat. § 7B-602(e) (2009).[3]

The effect of these new statutorily defined GAL practices was examined in *In re L.B.*, 187 N.C. App. 326, 653 S.E.2d 240 (2007), *aff'd per curiam*, 362 N.C. 507, 666 S.E.2d 751 (2008). In *L.B.*, the respondent-parents were each appointed a GAL pursuant to N.C.Gen. Stat. § 7B-1101.1. *Id.* at 328, 653 S.E.2d at 242. At that time, N.C. Gen. Stat. § 7B-1101.1 essentially stated that "the court may appoint a GAL to represent a parent having only a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest." *Id.* at 330, 653 S.E.2d at 243. The statute made no reference to Rule 17.[4] *Id.*

After the trial court terminated the respondent-parents' parental rights, they attempted to appeal the order; however, the notices of appeal were signed only by the respondent-parents' counsel and GALs, not by the parents themselves. *Id.* at 328, 653 S.E.2d at 242. The question before the *L.B.* Court was whether these signatures were sufficient to comply with the Rules of Appellate Procedure. To answer this question, the *L.B.* Court interpreted N.C. Gen. Stat. § 7B-1101.1(e) as follows:

> [A] GAL [appointed pursuant to N.C. Gen. Stat. § 7B-1101.1]'s authority is more limited. Pursuant to North Carolina General Statutes, section 7B-1101.1(e), a GAL "may engage in all of the following practices:" (1) helping the parent to enter consent orders, as opposed to entering consent orders on behalf of the parent; (2) facilitating service of process on the parent, as opposed to accepting service of process on behalf of the parent; (3) assuring that necessary pleadings are filed, as opposed to filing pleadings on behalf of the parent; and (4) assisting the parent, as opposed to acting on the parent's behalf, to ensure that the parent's procedural due process requirements are met. *See* N.C. Gen. Stat. § 7B-1101.1(e) (2005).

> . . .

---

3. N.C. Gen. Stat. § 7B-1101.1 (2009) contains the exact same language regarding the suggested practices of a GAL appointed under that statute. As a result, we rely upon cases interpreting either provision, as the analysis of one of these statutes is equally applicable to the other statute. *See In re C.B.*, 171 N.C. App. 341, 346, 614 S.E.2d 579, 582 (2005).

4. N.C. Gen. Stat. § 7B-1101.1 was subsequently amended to add a reference to Rule 17, effective 1 October 2009. *See* 2009 N.C. Sess. Laws 311.

[T]he language of the General Assembly is clear that the GAL's role is limited to one of assistance, not one of substitution. The General Assembly could have stated that the GAL was authorized to enter consent orders, accept service of process, file pleadings, or otherwise act on a parent's behalf, but it did not.

*Id.* at 329, 653 S.E.2d at 242. Thus, the Court concluded that "the language of section 7B-1101.1 plainly indicates the role of the GAL is to *assist* the parents rather than *replace* their authority to undertake acts of legal import themselves." *Id.* at 330-31, 653 S.E.2d at 243. Accordingly, the Court determined that the GALs' signatures on the respondent-parents' notices of appeal failed to comply with the Rules of Appellate Procedure and dismissed the appeal. *Id.* at 331-32, 653 S.E.2d at 243-44.

While *L.B.* discusses the role of a GAL during a termination proceeding at length, it is important to note that the Court was relying on a different statutory provision than the one at issue in the instant case. In reaching its conclusion, the *L.B.* Court heavily emphasized the General Assembly's decision to omit any language regarding Rule 17 in the newly created N.C. Gen. Stat. § 7B-1101.1. *Id.* at 330, 653 S.E.2d at 243. In the absence of any reference to Rule 17, the Court limited its determination of the role of a parent's GAL in termination proceedings to an examination of the suggested practices listed in N.C. Gen. Stat. § 7B-1101.1(e). *Id.* at 329-30, 653 S.E.2d at 242-43. Thus, it was important to the *L.B.* Court that "[t]he General Assembly could have stated that the GAL was authorized to enter consent orders, accept service of process, file pleadings, or otherwise act on a parent's behalf, but it did not." *Id.* at 329, 653 S.E.2d at 242.

In contrast, respondent-mother's GAL was appointed pursuant to N.C. Gen. Stat. § 7B-602(c), which explicitly states that "the court may appoint a guardian ad litem for a parent *in accordance with G.S. 1A-1, Rule 17.*" N.C. Gen. Stat. § 7B-602(c) (2009) (emphasis added). The consideration of Rule 17 in conjunction with N.C. Gen. Stat. § 7B-602(e) significantly alters the analysis of a GAL's duties and leads us to reach a different conclusion on the matter than the *L.B.* Court.[5] Under Rule 17, the GAL "shall file and serve such pleadings as may be required . . . ." N.C. Gen. Stat. § 1A-1, Rule 17(e) (2009). Moreover, Rule 17 further states that:

---

5. However, our determination of the GAL's duties *during* a termination proceeding does not require us to touch upon or otherwise disturb the ultimate question determined by the *L.B.* Court, that a notice of appeal signed by the GAL but not the parent is insufficient to grant jurisdiction of the appeal to this Court.

[i]n actions . . . when any of the defendants are . . . incompetent persons, . . . they must defend by . . . guardian ad litem appointed as hereinafter provided[.] . . . The guardian so appointed shall, if the cause is a civil action, file his answer to the complaint within the time required for other defendants, unless the time is extended by the court; and if the cause is a special proceeding, a copy of the complaint, with the summons, must be served on him. After 20 days' notice of the summons and complaint in the special proceeding, and after answer filed as above prescribed in the civil action, the court may proceed to final judgment as effectually and in the same manner as if there had been personal service upon the said infant or incompetent persons or defendants.

N.C. Gen. Stat. § 1A-1, Rule 17(b)(2). Ultimately, after the appointment of a GAL,

the court may proceed to final judgment, order or decree against any party so represented as effectually and in the same manner as if said party had been under no legal disability, had been ascertained and in being, and had been present in court after legal notice in the action in which such final judgment, order or decree is entered.

N.C. Gen. Stat. § 1A-1, Rule 17(e). Thus, Rule 17 contemplates active participation of a GAL in the proceedings for which the GAL is appointed. The presence and active participation of a GAL appointed according to the provisions of Rule 17 effectively removes any legal disability of the party that is so represented.

"[T]he appointment of a guardian ad litem will divest the parent of their fundamental right to conduct his or her litigation according to their own judgment and inclination." *In re J.A.A. & S.A.A.*, 175 N.C. App. 66, 71, 623 S.E.2d 45, 48 (2005) (citation omitted). While N.C. Gen. Stat. § 7B-602(e) emphasizes that the primary role of the parent's GAL in a termination proceeding is to act as "a guardian of procedural due process for [the] parent, to assist in explaining and executing her rights," *Shepard*, 162 N.C. App. at 227, 591 S.E.2d at 9, this is not the sole role of the GAL. "[A] guardian ad litem is considered an officer of the court and as such has a duty to represent the party he is appointed to represent to the fullest extent feasible and to do all things necessary to secure a judgment favorable to such party." Alan D. Woodlief, Jr., *Shuford North Carolina Civil Practice and Procedure* § 17:20 (6th ed. 2003) (footnotes omitted). Thus, while in many cases the GAL may fulfill his or her duties in a termination pro-

ceeding by merely assisting the parent, at times it will be necessary for the GAL to take further action during the proceeding in order to represent the parent to the fullest extent feasible and to secure a judgment favorable to that parent.

### C. Application to the Instant Case

"[The GAL's] powers are coterminous with the beginning and end of the litigation in which he is appointed." *Hagins v. Redevelopment Comm.*, 275 N.C. 90, 101, 165 S.E.2d 490, 497 (1969). Thus, once the trial court determined, in its discretion, that respondent-mother was "incompetent or ha[d] diminished capacity and c[ould not] adequately act in his or her own interest" and appointed her a GAL pursuant to N.C. Gen. Stat. § 7B-602, it was necessary for respondent-mother to be represented by a GAL throughout the neglect and dependency and termination proceedings, as long as the conditions that necessitated the appointment of a GAL still existed.

In the instant case, the evidence before the trial court was that the conditions which led to the appointment of respondent-mother's GAL still existed at the time of the termination hearing. Petitioner's motion to terminate respondent-mother's parental rights alleged that respondent-mother's mental illness prevented her from providing Amanda with proper care when they lived together. Additionally, DSS alleged in its motion that respondent-mother appeared to be mentally ill and that she engaged in bizarre behaviors indicating that respondent-mother may have had Obsessive Compulsive Disorder and other mental impairments.

Respondent-mother failed to appear for the termination hearing. Therefore, it was impossible for respondent-mother's GAL to assist her during the hearing. However, even in the absence of respondent-mother, the GAL was still required to remain and represent respondent-mother to the fullest extent feasible during the termination hearing. Instead, the trial court simply allowed Ms. Murphy's motion to withdraw as respondent-mother's GAL and then failed to appoint a substitute GAL.

The presence and participation of a GAL for respondent-mother was necessary, under Rule 17, for the trial court to "proceed to final judgment, order or decree against any party so represented as effectually and in the same manner as if said party had been under no legal disability. . . ." N.C. Gen. Stat. § 1A-1, Rule 17(e). Because respondent-mother was initially appointed a GAL pursuant to N.C. Gen. Stat.

§ 7B-602 and Rule 17, but not ultimately represented by a GAL during the termination hearing, the order terminating her parental rights to Amanda was invalid.

Amanda's GAL argues that it was unnecessary for respondent-mother to be represented by a GAL during the termination hearing because respondent-mother was represented by an attorney. However, N.C. Gen. Stat. § 7B-602(c) explicitly states that "[t]he parent's counsel shall not be appointed to serve as the guardian ad litem." N.C. Gen. Stat. § 7B-602(c) (2009). Thus, the statute makes clear that the parent's counsel and GAL serve different roles during the termination proceeding. Since these roles are not interchangeable, the fact that respondent-mother was represented by counsel during the termination hearing is insufficient to correct the trial court's error. Consequently, we must vacate the trial court's order terminating respondent-mother's parental rights to Amanda and remand the case for a new termination hearing.

### III. Conclusion

When a GAL is appointed in accordance with Rule 17 for a parent in an abuse, neglect, or dependency proceeding, or a termination of parental rights proceeding, it is the duty of the GAL to act "as a guardian of procedural due process for that parent, to assist in explaining and executing her rights." *Shepard*, 162 N.C. App. at 227, 591 S.E.2d at 9. In addition, the GAL appointed pursuant to Rule 17 "has a duty to represent the party he is appointed to represent to the fullest extent feasible and to do all things necessary to secure a judgment favorable to such party." Woodlief, Jr., *supra*, § 17:20. Finally, once a parent has been appointed a GAL according to Rule 17, the presence and participation of the GAL is necessary in order for the trial court to "proceed to final judgment, order or decree against any party so represented. . . ." N.C. Gen. Stat. § 1A-1, Rule 17(e).

Since the trial court determined that respondent-mother could not adequately represent her own interests and appointed a GAL to represent respondent-mother pursuant to N.C. Gen. Stat. § 7B-602(c), the requirements of Rule 17 applied to the termination proceedings. Thus, the trial court erred by conducting the termination hearing without the presence and participation of a GAL for respondent-mother, and the trial court's order terminating respondent-mother's parental rights to Amanda was invalid. Accordingly, we vacate the trial court's order and remand the case for a new termination hearing that complies with the requirements of Rule 17. This disposition

makes it unnecessary to address respondent-mother's remaining issue on appeal.

Vacated and remanded.

Judges HUNTER, Robert C. and GEER concur.