IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-577

Filed 20 May 2026

Guilford County, No. 23JA000599-400

IN THE MATTER OF: K.R.

Appeal by Respondent-Mother from orders entered 16 August 2024 and 14 March 2025 by Judge Ashley Watlington-Simms and Judge Angela C. Foster, respectively, in Guilford County District Court. Heard in the Court of Appeals 10 February 2026.

> *Mercedes O. Chut, for Petitioner-Appellee Guilford County Department of Social Services.*
>
> *Reeves Dienere & Wright, by Anne C. Wright, for Respondent-Appellant-Mother.*
>
> *Administrative Office of the Courts, by Attorney Brittany McKinney, for the Guardian ad Litem.*

CARPENTER, Judge.

Respondent-Mother appeals after a trial court adjudicated her son, Kayden,[1] neglected and dependent. On appeal, Respondent-Mother argues that the trial court erred by: (1) adjudicating Kayden as neglected; (2) adjudicating Kayden as dependent; (3) appointing a Rule 17 Guardian ad Litem ("GAL") for Respondent-

---

[1] Pseudonyms are used to protect the identity of the juvenile and for ease of reading. *See* N.C. R. App. P. 42(b) (2025).

Mother; and (4) excluding Respondent-Mother's hospital medical records. After careful review, we affirm.

## I.     Factual & Procedural Background

After a hearing on 16 August 2024, the trial court entered an order that day adjudicating Kayden as neglected and dependent. After a hearing on 8 November 2024, the trial court also entered a disposition order on 14 March 2025. Evidence from the hearings tended to show the following.

Kayden was born in September 2023. While at the hospital, the Alamance County Department of Social Services notified the Guilford County Department of Social Services ("DSS") that Respondent-Mother wanted to leave with Kayden, who was experiencing breathing problems, against medical advice. The doctor eventually convinced Respondent-Mother to keep Kayden in the hospital.

On 26 September 2023, DSS met with Respondent-Mother at the hospital. Respondent-Mother said that she was facing eviction, but she was working to secure pro bono representation to contest it. Respondent-Mother told DSS that she had a hotel room nearby to wait for Kayden's discharge, but she refused to share the specifics. Respondent-Mother also stated that she suffered from depression and anxiety and shared conspiracy theories about the hospital. After forty-eight hours, Kayden's breathing normalized.

On 26 September 2023, DSS filed a petition alleging that Kayden was a neglected and dependent juvenile. DSS was granted nonsecure custody of Kayden on

27 September 2023. Respondent-Mother agreed to a case plan, which required her to obtain and maintain stable housing, complete a parenting psychological evaluation, undergo a mental health assessment, and participate in therapy as needed. Respondent-Mother also gave DSS access to her mental health records and her home. Father, who is not a party to this appeal, had not been a part of Kayden's life and was not involved in the care of Kayden.

Respondent-Mother gave DSS the name of a potential alternative childcare provider for a potential dependency adjudication, but the friend told DSS that she refused to take on that role. When DSS told Respondent-Mother of her friend's refusal, Respondent-Mother continued to name the friend as the alternative childcare provider and did not suggest anyone else. According to DSS, "it appeared that there were some mental issues or, you know, there was something going on that we couldn't quite put a finger on it." Respondent-Mother revoked access to her mental health records on 30 October 2024, limiting DSS's ability to investigate further.

The trial court conducted a hearing and on 11 October 2023 appointed a Rule 17 GAL for Respondent-Mother. On 25 October 2023, Respondent-Mother filed a motion to remove the Rule 17 GAL. The trial court granted the motion and appointed an attorney to represent Respondent-Mother. After another Rule 17 GAL hearing, the trial court appointed a second Rule 17 GAL. The trial court also allowed two appointed attorneys to withdraw and appointed a third attorney to represent Respondent-Mother.

On 16 August 2024, the trial court conducted an adjudication hearing. After DSS rested its case, Respondent-Mother moved to unseal her hospital medical records, which she had previously subpoenaed. The trial court denied her motion.

In its adjudication order, the trial court made the following findings of fact:

> 8. It took great effort from the pediatrician to convince [Respondent-Mother] to allow [Kayden] to continue to be monitored at the hospital for an additional twenty-four (24) hours . . . . [DSS] diligently questioned [Respondent-Mother] to gather more information but [Respondent-Mother] would not answer any questions. The juvenile was ready for discharge, but the mother did not provide a clear explanation regarding her plan for housing. [Respondent-Mother] advised that she had a few bottles and two items of clothing, but she did not have a crib or bassinet for the baby.
> . . .
>
> 10. [Respondent-Mother] acquired a hotel room in Greensboro, North Carolina for the night but did not disclose the location of the hotel room. She had no plan for housing moving forward. . . . [DSS] had to explain the Department's concerns several times; however, [Respondent-Mother] only focused on Alamance County's plan to discharge the juvenile to her.
>
> 11. [Respondent-Mother] explained that she was postpartum, experiencing a lot of emotions, wanted to experience being a mother and was unable to make any permanent decisions. [Respondent-Mother] exhibited paranoid behavior and accused the hospital of documenting inaccurate information in the patient chart.
> . . .
>
> 25. The Court questions the logic and reasoning of [Respondent-Mother] regarding the acquisition of a hotel room due to the appointment for the minor child the following day and need to stay close. The Court takes

notice that Alamance County is a neighboring county of Guilford County. Alamance County is in such a close proximity that it should and would not require a newborn to have to sleep in a "temporary" hotel location solely for a medical appointment scheduled for the following day especially when [Respondent-Mother] expected family from out of state to be visiting.

. . .

30. The Court finds that the admission of leaving a minor child in the nursery [of the hospital] due to her inability to adequately address the medical and feeding needs of the minor child after birth expresses to the court that the minor child did not receive proper care [or] supervision . . . at the time of the filing of the petition.

. . .

35. [Respondent-Mother] does not believe and will not admit that her decisions were not in [Kayden]'s best interest however [Respondent-Mother] acknowledges that she made some contradictory statements. The contradictory statements and unreliable statements made regarding housing, ability to feed the minor child, ability to address the medical needs of the minor child, prior mental health history of [Respondent-Mother], inability to provide alternative placement providers, inability to understand the need of alternative placement providers and verification by the Department based on the reports made to the Department have all been considered by the Court during this adjudication hearing.

The trial court also permitted supervised visitation with Kayden twice per week for two hours.

Respondent-Mother then filed a civil suit and bar complaint against the second Rule 17 GAL. At the disposition hearing, the trial court allowed the second Rule 17 GAL to withdraw.

On 14 March 2025, the trial court entered a disposition order and set the primary permanency plan for Kayden as adoption with a secondary plan of reunification. It continued supervised visitation, finding that Respondent-Mother "exercise[d] her visitation" and "[wa]s engaged" despite not always attending "due to being upset with [DSS]." On 28 March 2025, Respondent-Mother filed a notice of appeal from the adjudication and disposition orders. She also filed a petition for writ of supersedeas, which this Court denied on 21 July 2025.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(2), 7B-1001(a)(3) (2025).

## III. Issues

The issues on appeal are whether the trial court erred by: (1) adjudicating Kayden as neglected; (2) adjudicating Kayden as dependent; (3) appointing a Rule 17 GAL for Respondent-Mother; and (4) excluding Respondent-Mother's hospital medical records.

## IV. Analysis

### A. Initial Adjudications

Respondent-Mother argues the evidence and findings are insufficient to adjudicate Kayden as a neglected and dependent juvenile. We disagree.

#### 1. Standard of Review

"When reviewing a trial court's order adjudicating a juvenile abused,

neglected, or dependent, this Court's duty is 'to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by findings of fact.' " *In re F.C.D.*, 244 N.C. App. 243, 246, 780 S.E.2d 214, 217 (2015) (quoting *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007)). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." *In re T.H.T.,* 185 N.C. App. at 343, 648 S.E.2d at 523 (citation omitted).

"Unchallenged findings of fact are deemed supported by the evidence and are binding on appeal." *In re K.H.*, 281 N.C. App. 259, 266, 867 S.E.2d 757, 762 (2022) (citation omitted). When reviewing challenged findings of fact in a juvenile order, this Court sets aside findings " 'that lack sufficient evidentiary support' and examines whether the remaining findings support the trial court's determination." *In re A.J.L.H.*, 384 N.C. 45, 52, 884 S.E.2d 687, 693 (2023) (quoting *In re A.C.*, 378 N.C. 377, 394, 861 S.E.2d 858, 874 (2021)).

The determination of whether a child is abused, neglected, or dependent is a conclusion of law. *See In re Ellis*, 135 N.C. App. 338, 340, 520 S.E.2d 118, 120 (1999) (citation omitted). We review the trial court's conclusions of law de novo. *In re G.C.*, 384 N.C. 62, 66, 884 S.E.2d 658, 661 (2023). Under a de novo review, this Court " 'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319

(2003)).

## 2. Neglect

Respondent-Mother asserts that the trial court's findings failed to show abandonment, improper care and supervision, and an injurious living environment, and she challenges Findings 8, 10, 11, 29, and 30.

A neglected juvenile, in relevant part, is defined as:

> [a]ny juvenile less than 18 years of age . . . whose parent, guardian, custodian, or caretaker . . . does not provide proper care, supervision, or discipline; has abandoned the juvenile . . .; has not provided or arranged for the provision of necessary medical or remedial care; or creates or allows to be created a living environment that is injurious to the juvenile's welfare.

N.C. Gen. Stat. § 7B-101(15)(a)–(c), (e) (2025) (cleaned up). Only one basis is required for an adjudication of neglect. *See id.*

Before adjudicating a juvenile neglected, the trial court must also find " 'some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline.' " *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003) (quoting *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901–02 (1993)). With newborns, "the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." *In re McLean*, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999). " 'It is well-established that the trial court need not wait

for actual harm to occur to the child if there is a substantial risk of harm to the child in the home.' " *In re D.B.J.*, 197 N.C. App. 752, 755, 678 S.E.2d 778, 780 (2009) (quoting *In re T.S., III & S.M.*, 178 N.C. App. 110, 113, 631 S.E.2d 19, 22 (2006)).

"[F]or a court to find that the child resided in an injurious environment, evidence must show that the environment in which the child resided has resulted in harm to the child or a substantial risk of harm." *In re K.H.*, 281 N.C. App. 259, 266, 867 S.E.2d 757, 762 (2022) (citation and quotation marks omitted). "A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.J.S.M.*, 257 N.C. App. 633, 637, 810 S.E.2d 370, 373 (2018) (citation omitted). Thus, a parent's inability to provide stable housing in accordance with the case plan is an important consideration in finding an injurious living environment. *See In re M.R.*, 381 N.C. 838, 846, 874 S.E.2d 554, 560 (2022).

Further, a parent's mental health issues, particularly when unaddressed by treatment, can contribute to an adjudication of neglect. *See In re G.W.*, 286 N.C. App. 587, 595, 882 S.E.2d 81, 89 (2022). However, "[t]he causal connection between the mental illness and the incapacity to provide proper care must be clear." *In re J.M.W.*, 179 N.C. App. 788, 793, 635 S.E.2d 916, 920 (2006) (citation omitted). Thus, a "repeated failure to comprehend and protect the children from the risks of harm to which she exposed them" can provide clear and convincing evidence of neglect. *See In re L.H.*, 378 N.C. 625, 637, 862 S.E.2d 623, 631 (2021). Additionally, a parent's refusal to cooperate with DSS shows a substantial risk of future harm to the juvenile

that can support an adjudication of neglect. *See In re T.R.T.*, 225 N.C. App. 567, 572, 737 S.E.2d 823, 827 (2013).

Here, although we agree with Respondent-Mother that the trial court's neglect by abandonment conclusion is unsupported, there was clear and convincing evidence that she failed to provide Kayden with the proper care or supervision and allowed the creation of an injurious living environment. *See* N.C. Gen. Stat. § 7B-101(15)(a)–(b), (e).

First, Respondent-Mother's desire to leave the hospital with Kayden despite his unresolved breathing problems tended to show a substantial risk of future harm. *See In re Stumbo*, 357 N.C. at 283, 582 S.E.2d at 258. Although Respondent-Mother ultimately agreed to keep Kayden in the hospital, the doctor had to convince her to do so. Due to concerns about Respondent-Mother's ability to care for Kayden because of her insistence on leaving with Kayden against medical advice, the hospital involved the Alamance County Department of Social Services. Further, there was clear and convincing evidence that Respondent-Mother did not understand the risks associated with Kayden's breathing issue, the importance of additional treatment, or the reason for DSS's involvement. *See In re L.H.*, 378 N.C. at 637, 862 S.E.2d at 631. These facts tend to show a substantial risk that Respondent-Mother may disregard or not seek necessary medical care for Kayden in the future. *See id.* at 637, 862 S.E.2d at 631; *In re D.B.J.*, 197 N.C. App. at 755, 678 S.E.2d at 780.

Second, there was clear and convincing evidence of a causal connection

between a substantial risk to Kayden and Respondent-Mother's mental health issues as evidenced by her revocation of consent for DSS to review her medical records and lack of treatment. *See In re D.B.J.*, 197 N.C. App. at 755, 678 S.E.2d at 780; *In re J.M.W.*, 179 N.C. App. at 793, 635 S.E.2d at 920. While Respondent-Mother shared that she suffered from depression and anxiety, DSS had additional concerns about Respondent-Mother's ability to understand Kayden's needs and her situation with DSS. *See In re J.M.W.*, 179 N.C. App. at 793, 635 S.E.2d at 920. Indeed, DSS believed "there was something going on that [it] couldn't quite put a finger on . . . ." DSS, however, was unable to assess and recommend mental health services for Respondent-Mother due to her having revoked consent to access to her records. *See In re T.R.T.*, 225 N.C. App. at 572, 737 S.E.2d at 827. Thus, Respondent-Mother was noncompliant with her case plan, which recommended mental health assessments and therapy. *See In re M.J.S.M.*, 257 N.C. App. at 637, 810 S.E.2d at 373; *In re G.W.*, 286 N.C. App. at 595, 882 S.E.2d at 89. There was substantial cause for concern regarding Respondent-Mother's mental health, therefore, there was clear and convincing evidence of a causal connection between her mental health and a substantial risk to Kayden. *See In re D.B.J.*, 197 N.C. App. at 755, 678 S.E.2d at 780.

Third, there was clear and convincing evidence that Respondent-Mother did not have secure housing for Kayden. *See In re M.R.*, 381 N.C. at 846, 874 S.E.2d at 560. Respondent-Mother was facing eviction, which meant that DSS could not confirm that Respondent-Mother could provide stable housing for Kayden. *See id.* at

846, 874 S.E.2d at 560. Thus, Respondent-Mother was not in compliance with her case plan to obtain and maintain stable housing. *See In re M.J.S.M.*, 257 N.C. App. at 637, 810 S.E.2d at 373. Respondent-Mother also refused to share with DSS the location of her hotel room during Kayden's hospitalization. *See In re T.R.T.*, 225 N.C. App. at 572, 737 S.E.2d at 827. Considering Respondent-Mother's reluctance to continue necessary medical care for Kayden, mental health concerns, and unstable housing, the trial court did not err in concluding that there was a lack of proper care or supervision and that an injurious living environment existed to support an adjudication of neglect. *See* N.C. Gen. Stat. § 7B-101(15)(a), (e).

### 3. Dependency

Respondent-Mother challenges Finding 25, in which the trial court questioned Respondent-Mother's decision to stay in a hotel during Kayden's hospitalization. She also contends that the trial court erred in adjudicating Kayden as dependent because Respondent-Mother could provide for Kayden's care and supervision. We disagree.

"[T]he purpose of an adjudicatory hearing is to determine only 'the existence or nonexistence of any of the conditions alleged in a petition.' " *In re V.B.*, 239 N.C. App. 340, 344, 768 S.E.2d 867, 869–70 (2015) (quoting N.C. Gen. Stat. § 7B-802 (2013)). During the hearing, "an important aspect of the trial court's role as finder of fact is assessing the demeanor and credibility of witnesses, often in light of inconsistencies or contradictory evidence[;] . . . appellate courts may not reweigh the underlying evidence presented at trial." *In re J.A.M.*, 372 N.C. 1, 11, 822 S.E.2d 693,

700 (2019).

A dependent juvenile is defined as a:

> juvenile in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-101(9). A trial court cannot adjudicate a juvenile as dependent so long as at least one parent can provide or arrange for adequate care and supervision of the child. *In re V.B.*, 239 N.C. App. at 342, 768 S.E.2d at 868.

Here, Respondent-Mother was unable to provide proper care or supervision. *See* N.C. Gen. Stat. 7B-101(9). As explained above, there was clear and convincing evidence that Respondent-Mother could not provide proper care for Kayden through her disagreement with the doctor about discharge, her mental health, and her lack of secure housing. *See In re T.R.T.*, 225 N.C. App. at 572, 737 S.E.2d at 827; *In re L.H.*, 378 N.C. at 637, 862 S.E.2d at 631. Thus, even assuming Finding 25, which appears to illustrate the trial court's credibility concerns, was unsupported and should be set aside, the trial court's conclusion as to improper care or supervision remains supported. *See In re J.A.M.*, 372 N.C. at 11, 822 S.E.2d at 700; N.C. Gen. Stat. § 7B-101(9).

Respondent-Mother similarly failed to show the availability of appropriate alternative childcare. *See* N.C. Gen. Stat. § 7B-101(9). Respondent-Mother does not

challenge the trial court's finding that Respondent-Mother identified her friend, who was unwilling to serve as an alternative childcare provider. Respondent-Mother also does not challenge the trial court's finding that Respondent-Mother continued to assert to DSS that her friend was her alternative childcare provider, despite DSS telling Respondent-Mother that her friend had declined. Moreover, Respondent-Mother does not challenge the trial court's finding that "there were no other viable options or reasonable alternatives for placement at the time of the filing of the petition." These findings are binding on appeal. *See In re K.H.*, 281 N.C. App. at 266, 867 S.E.2d at 762. Further, there is no other parent available to provide care for Kayden. *See In re V.B.*, 239 N.C. App. at 342, 768 S.E.2d at 868. Accordingly, the trial court did not err in adjudicating Kayden as a dependent juvenile. *See* N.C. Gen. Stat. § 7B-101(9).

**B. Rule 17 GAL**

Respondent-Mother next argues that the trial court abused its discretion in appointing her a Rule 17 GAL because it decided twice that she did not require the assistance of one. We disagree.

"A trial court's decision concerning whether to appoint a parental guardian ad litem based on the parent's incompetence is reviewed on appeal for abuse of discretion. *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015) (citation omitted). "An '[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a

reasoned decision.' " *Id.* at 107, 772 S.E.2d at 455 (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

A trial court may appoint a Rule 17 GAL for an incompetent parent during adjudicatory and termination proceedings, N.C. Gen. Stat. § 7B-602(c) (2025), upon a "reasonable basis" that the parent is either incompetent or has diminished capacity without the ability to adequately act in her own interest, *In re P.D.R.*, 224 N.C. App. 460, 466, 737 S.E.2d 152, 157 (2012). A trial court, however, "should always keep in mind that the appointment of a guardian ad litem will divest the parent of their fundamental right to conduct his or her litigation according to their own judgment and inclination." *In re J.A.A.*, 175 N.C. App. 66, 71, 623 S.E.2d 45, 48 (2005) (citation omitted). Thus, a trial court abuses its discretion by failing to provide a party notice and an opportunity to be heard before appointing a Rule 17 GAL. *See In re A.T.*, __ N.C. App. __ __, 923 S.E.2d 841, 847 (2025) (citation omitted).

A parent's legal counsel and Rule 17 GAL "serve different roles during the termination proceeding[s]." *In re A.S.Y.*, 208 N.C. App. 530, 540, 703 S.E.2d 797, 803 (2010). Thus, a trial court should appoint a new Rule 17 GAL after the first has withdrawn, despite the respondent retaining independent counsel, if questions regarding the respondent's competency remain. *See id.* at 539–40, 703 S.E.2d at 802–03.

Further, " 'it is generally the appellant's duty and responsibility to see that the record is in proper form and complete and this Court will not presume error by the

trial court when none appears on the record to this Court.' " *GEA, Inc. v. Luxury Auctions Mktg., Inc.*, 259 N.C. App. 443, 453, 817 S.E.2d 422, 430 (2018) (quoting *King v. King*, 146 N.C. App. 442, 445–46, 552 S.E.2d 262, 265 (2001)). Rather, " 'where the record is silent on a particular point, we presume that the trial court acted correctly.' " *Id.* at 453, 817 S.E.2d at 430 (brackets omitted) (quoting *Granville Med. Ctr. v. Tipton*, 160 N.C. App. 484, 488, 586 S.E.2d 791, 795 (2003)).

Here, the trial court did not abuse its discretion by appointing a new Rule 17 GAL for Respondent-Mother. *See In re T.L.H.*, 368 N.C. at 107, 772 S.E.2d at 455. Respondent-Mother did not include a transcript of the hearing resulting in the appointment of the second Rule 17 GAL. *See GEA, Inc.*, 259 N.C. App. at 453, 817 S.E.2d at 430. Respondent-Mother also does not contend the trial court failed to give her notice, and the cold record shows the trial court conducted an independent inquiry and afforded all parties the opportunity to be heard. *See In re A.T.*, 923 S.E.2d at 847. Indeed, despite mixed evidence on this issue, the trial court's order indicates it resolved material conflicts and made a reasoned decision based on its Rule 17 GAL inquiry. *See In re P.D.R.*, 224 N.C. App. at 466, 737 S.E.2d at 157. Presuming that "the trial court acted correctly[,]" *see GEA, Inc.*, 259 N.C. App. at 453, 817 S.E.2d at 430, we cannot say that the trial court abused its discretion in appointing a Rule 17 GAL for Respondent-Mother, *see In re T.L.H.*, 368 N.C. at 107, 772 S.E.2d at 455.

### C. Medical Records

Lastly, Respondent-Mother contends that the trial court erred and violated her

due process rights by excluding her hospital medical records. Specifically, Respondent-Mother asserts that the trial court erroneously required her to follow certain steps for admissibility not present in Rule 803(6) and that the exclusion of her hospital medical records was prejudicial. We disagree.

As Respondent-Mother failed to raise a constitutional objection, *see In re J.N.*, 381 N.C. 131, 133, 871 S.E.2d 495, 497 (2022), we review the trial court's ruling regarding the admissibility of evidence for abuse of discretion, *see Brown v. City of Winston-Salem*, 176 N.C. App. 497, 505, 626 S.E.2d 747, 753 (2006) (citation omitted).

Under Rule 803(6) of the North Carolina Rules of Evidence, a party can circumvent the hearsay rule and admit evidence of regularly conducted activities as business records, including medical records. N.C. Gen. Stat. § 8C-1, Rule 803(6) (2025). Under Rule 45 of the North Carolina Rules of Civil Procedure, however, "[c]opies of hospital medical records . . . shall not be open to inspection or copied by any person, except to the parties to the case or proceedings and their attorneys in depositions, until ordered published by the judge at the time of the hearing or trial." N.C. R. Civ. P. 45(c)(2) (2025).

In other words, "hospital medical records" subpoenaed under Rule 45 arrive at the clerk's office sealed to protect confidentiality. *See, e.g., Bass v. Sides*, 120 N.C. App. 485, 487–88, 462 S.E.2d 838, 840–41 (1995) (the trial court finding an attorney violated Rule 45 by removing the medical records from the clerk's office without the trial court's approval); *Doe v. Doe*, 263 N.C. App. 68, 79–80, 823 S.E.2d 583, 591 (2018)

(the trial court sealing sensitive documents to protect confidentiality). Thus, before moving to admit the hospital medical records into evidence, a party must make a motion to unseal them. *See* N.C. R. Civ. P. 45(c)(2).

A timely-filed motion to unseal notifies the trial court of delivery and initiates any additional pre-publication actions, which may include *in camera* review, redaction, and distribution to the parties under a protective order. *See, e.g., Sessions v. Sloane*, 248 N.C. App. 370, 382, 789 S.E.2d 844, 854 (2016) (explaining that a party must submit a motion and request an *in camera* review of sealed records); *Miller v. Forsyth Mem'l Hosp.*, 174 N.C. App. 619, 621, 625 S.E.2d 115, 116 (2005) (Pre-publication actions allow "the trial court to direct that the requested information be produced under seal [from the clerk's office] for determination . . . of relevancy or potential for leading to discovery of admissible evidence."); *In re J.S.L.*, 177 N.C. App. 151, 157, 628 S.E.2d 387, 390 (2006) (determining that the trial court did not err in admitting hospital medical records into evidence after it entered an order in accordance with Rule 45). When a trial court grants a party's motion to unseal, the certified copies, "unless otherwise objectionable, shall be admissible in any action or proceeding without further certification or authentication." N.C. R. Civ. P. 45(c)(2).

Here, the trial court did not abuse its discretion in excluding Respondent-Mother's hospital medical records. *See Brown*, 176 N.C. App. at 505, 626 S.E.2d at 753. While medical records are generally admissible, *see* N.C. Gen. Stat. § 8C-1, Rule 803(6), the certified copies of Respondent-Mother's hospital medical records were

sealed, *see Doe*, 263 N.C. App. at 79–80, 823 S.E.2d at 591. Respondent-Mother, however, did not move to unseal or otherwise raise the issue of her hospital medical records until after DSS rested its case at adjudication. Under these circumstances, where the first and only request to unseal occurred mid-trial, it was not arbitrary or unreasonable for the trial court to exclude sealed records that no party had an opportunity to review or redact. *See Miller*, 174 N.C. App. at 621, 625 S.E.2d at 116; *Brown*, 176 N.C. App. at 505, 626 S.E.2d at 753.

## V. Conclusion

In sum, we conclude that the trial court did not err in adjudicating Kayden as neglected and dependent, appointing a new Rule 17 GAL, or excluding Respondent-Mother's hospital medical records.

AFFIRMED.

Judges ARROWOOD and GORE concur.