Out of the Box Devs., LLC v. LogicBit Corp., 2014 NCBC 7.

NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 8327

OUT OF THE BOX DEVELOPERS, LLC,
d/b/a OTB CONSULTING,

        Plaintiff,

v.

LOGICBIT CORP., FRANCISCO A.
RIVERA, DOAN LAW, LLP, and THE
DOAN LAW FIRM, LLP,

        Defendants.

**ORDER AND OPINION**

{1}     THIS MATTER is again before the court for consideration of discovery sanctions. In particular, this Order rules upon Plaintiff Out of the Box Developers, LLC's ("OTB") Motions filed on October 2, 2013 and October 7, 2013 ("Sanctions Motions"), which sought sanctions, a show cause order, and contempt for violation of the First Amended Protective Order ("Protective Order") entered on June 1, 2012. The court has by prior Order of January 30, 2014 denied the Motions insofar as they seek any show cause order or contempt finding against any Party or sanctions against any Party other than LogicBit Corp. ("LogicBit") or Francisco A. Rivera ("Rivera"). Thus, only the issue of sanctions against those Defendants remains for resolution. After giving Defendant a full opportunity to be heard, and upon the Findings of Fact and Conclusions of Law that follow, Plaintiff's Sanctions Motions are GRANTED in part and DENIED in part.

*Ellis & Winters LLP by Jonathan D. Sasser, C. Scott Meyers, and Lenor Marquis Segal for Plaintiff.*

*Sands Anderson PC by David McKenzie and Jeffrey Hamilton Geiger for Defendants.*

Gale, Judge.

## I. INTRODUCTION

{2}     OTB's Sanctions Motions raise novel issues of North Carolina procedural law concerning a trial court's authority to sanction violations of protective orders entered under Rule 26(c) of the North Carolina Rules of Civil Procedure ("Rule(s)").  The Parties agree that the court has some authority to sanction such violations, but disagree over the source of that authority and the specific sanctions the court may impose and specifically whether it has authority under Rule 37(b)(2), which expressly delineates different sanctions available to the court.  The court concludes that both Rule 37(b)(2) and the inherent authority of a trial court to manage its docket and compel compliance with its orders permit imposing sanctions for violations of Rule 26(c) protective orders.

## II. SOURCES OF AUTHORITY AND PERMISSIBLE SANCTIONS

{3}     The court has multiple sources of authority to impose a variety of sanctions for violations of a protective order entered pursuant to Rule 26(c).[1]

### A. Rule 37(b)(2)

{4}     Rule 37(b)(2) provides for sanctions "[i]f a party . . . fails to obey an order to provide or permit discovery[.]"  The issue here is whether a Rule 26(c) protective order is "an order to provide or permit discovery" within the meaning of Rule 37(b)(2).

---

[1] The court notes that Rule 41(b) also permits dismissal of dismissal of an action or claim for failure "to comply with . . . *any* [court] order."  N.C. Gen. Stat. § 1A-1, Rule 41(b) (emphasis added); *see also* § 1A-1, Rule 41(c) (applying Rule 41 to "the dismissal of any counterclaim, crossclaim, or third-party claim.")  In light of the court's determination that its inherent authority and Rule 37 permit imposing sanctions for violations of Rule 26(c) protective orders, the court need not undertake a separate analysis under Rule 41(b).

{5}     Rule 37 permits sanctions "for failure . . . to comply with discovery processes." *Bumgarner v. Reneau*, 332 N.C. 624, 630, 422 S.E.2d 686, 690 (1992); *see also Cloer v. Smith*, 132 N.C. App. 569, 573, 512 S.E.2d 779, 781 (1999) ("Rule 37 gives the trial court express authority . . . to sanction a party for abuse of the discovery process."). Rule 37 should be construed liberally to provide trial courts with flexibility to impose sanctions. *Am. Tel. & Tel. Co. v. Griffin*, 39 N.C. App. 721, 727, 251 S.E.2d 885, 888 (1979). The Comment to Rule 37 notes that subsection (b)(2) provides for comprehensive enforcement of all "orders for discovery[,]" including orders entered pursuant to Rule 26(c). N.C. Gen. Stat. 1A-1, Rule 37, Comment to the 1975 Amendment. Still, no North Carolina case has squarely addressed whether Rule 37 permits sanctions for violations of Rule 26(c) protective orders.[2]

{6}     North Carolina's Rule 37 is substantively identical to Rule 37 of the Federal Rules of Civil Procedure, so decisions interpreting Federal Rule 37 provide "guidance and enlightenment" for interpreting North Carolina Rule 37. *See, e.g.*, *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) (noting similarity of North Carolina and Federal Rules and confirming persuasive value of decisions interpreting Federal Rules). Most federal courts recognize that Rule 37(b)(2) authorizes sanctions for violations of Rule 26(c) protective orders.[3] In a

---

[2] In *GE Betz, Inc. v. Conrad*, 752 S.E.2d 634 (2013), the Court of Appeals noted that the trial court awarded sanctions against an attorney for violating a Rule 26(c) protective order entered in the case. 752 S.E.2d at 643. The court did not directly address whether Rule 37 permits sanctions for violations of Rule 26 protective orders, but instead held that Rule 37(b)(2) does not permit sanctions awards against attorneys who violate such orders. *See id.* at 659.

[3] *Compare Smith & Fuller, PA v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489–90 (5th Cir. 2012) (Rule 37 permits sanctions for violating Rule 26(c) protective order); *Westinghouse Elec. Corp. v. Newman & Holtzinger, PC*, 992 F.2d 932, 934–35 (9th Cir. 1993) (same); *Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846-LHK, 2014 U.S. Dist. LEXIS 11778, at *35–*36 (N.D. Cal. Jan. 29, 2014) (same); *Instant Tech., LLC v. Defazio*, No. 12 C 491, 2013 U.S. Dist. LEXIS 160251, at *8–*9 (N.D. Ill. Nov. 8, 2013) (same); *Lambright v. Ryan*, No. CV-87-235-TUC-JMR, 2010 U.S. Dist. LEXIS 52781, at *14–*15 (D. Ariz. May 4, 2010) (same); *Schiller v. City of New York*, No. 04 Civ. 7922, 04 Civ. 7921, 2007 U.S. Dist. LEXIS 40253, at *9–*11 (S.D.N.Y. June 5, 2007) (same); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-CV-0944-CVE-FHM, 2006 U.S. Dist. LEXIS 47014, at *9–*10 (N.D. Okla. July 11, 2006) (same); *Frazier v. Layne Christensen Co.*, 04-C-315-C, 2005 U.S. Dist. LEXIS 2358, at *6–*13 (W.D. Wisc. Feb. 11, 2005) (same); *Whitehead v. Gateway Chevrolet, Oldsmobile*, No. 03 C 5684, 2004 U.S. Dist. LEXIS 11979, at *10–*11 (N.D. Ill. June 29, 2004) (same); *Am. Nat'l Bank & Trust Co. of Chicago v. AXA Client Solutions, LLC*, No. 00 C 6786, 2002 U.S. Dist. LEXIS 9511, at

recent opinion considering the issue, the Fifth Circuit, relying on several of the cases cited in the preceding footnote and the Advisory Committee Notes to Federal Rule 37, held that the trial court could sanction violations of a Rule 26(c) protective order under Rule 37. *Smith & Fuller, PA*, 685 F.3d at 489–90. The protective order there "was granted 'to provide or permit discovery' . . . within the meaning of Rule 37(b)" because it provided "the method and terms" for discovery of "thousands of pages of trade secrets or confidential information." *Id.* at 490 (quoting F.R. Civ. P. 37(b)(2)(A)).

{7}   The Protective Order at issue here, like the one in *Smith & Fuller, PA*, governs production of materials potentially containing trade secrets or confidential information. Although the court has not scrutinized (nor has it been requested to scrutinize) each document produced under the Protective Order to determine whether it qualifies for Rule 26(c) protection, this case—a highly contentious trade secret dispute—involves discoverable information that the Parties would not freely produce without some degree of protection under Rule 26(c). The Protective Order itself notes that fact, and it provides a streamlined process[4] for the Parties to exchange discovery without resorting to unnecessary litigation over every potentially protectable document.

{8}   Protective orders like the one entered in this case are essential instruments for allowing efficient discovery in litigation. Consequently, the orderly and efficient progression of litigation demands that the trial court be empowered to police violations of those orders. The court concludes that Rule 37 provides that power.

{9}   Rule 37 supplies the court with a broad spectrum of sanctions, including striking pleadings in whole or part, dismissing the action, entering

---

*2–*9, *22 (N.D. Ill. May 28, 2002) (same); *Poliquin v. Garden Way, Inc.*, 154 FRD 29, 31 (D. Me. 1994) (same); *with Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001) (Rule 26(c) protective order not enforceable with Rule 37 sanctions because it is not an "order to provide or permit discovery").

[4] As noted above, the Party asserting confidentiality under the Protective Order bears the burden of demonstrating entitlement to such protection if the other Party challenges the confidentiality designation.

default, and treating further violations of court orders as contempt of court. N.C. Gen. Stat. 1A-1, Rule 37(b)(2)a.–d. Rule 37 also requires the party failing to comply with discovery orders "to pay the reasonable expenses, including attorney's fees," incurred by its noncompliance "unless the court finds that the [noncompliance] was substantially justified or that other circumstances make an award of expenses unjust." *Id.* The court need not find "willful" conduct in order to impose any of the sanctions allowed by Rule 37. *Henderson v. Wachovia Bank of N.C., N.A.*, 145 N.C. App. 621, 629, 551 S.E.2d 464, 470 (2001). Similarly, the party seeking Rule 37 sanctions need not show prejudice resulting from the sanctionable conduct. *Clark v. Penland*, 146 N.C. App. 288, 291, 552 S.E.2d 243, 245 (2001) (citing *Roane-Barker v. Southeastern Hosp. Supply Corp.*, 99 N.C. App. 30, 37, 392 S.E.2d 663, 668 (1990)). Willfulness, bad faith, or prejudice to another party do, however, influence *this* court's discretion in determining the appropriate sanction. If a trial court strikes claims, counterclaims, or defenses, "it must do so after considering lesser sanctions." *Clawser v. Campbell*, 184 N.C. App. 526, 531, 646 S.E.2d 779, 783 (2007) (citations omitted); *see also Page v. Mandel*, 154 N.C. App. 94, 102, 571 S.E.2d 635, 640 (2002) (holding trial court must consider lesser sanctions when dismissing claims, regardless of authority trial court uses to impose sanction of dismissal).

B. Inherent Authority

{10} Trial courts retain inherent authority "to do all things that are reasonably necessary for the proper administration of justice." *Beard v. N.C. State Bar*, 320 N.C. 126, 129, 357 S.E.2d 694, 696 (1987). This inherent authority includes "the power . . . to sanction parties for failure to comply with court orders[.]" *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674, 360 S.E.2d 772, 776 (1987). Inherent authority also permits a trial court to "impose sanctions for discovery abuses beyond those enumerated in Rule 37." *Cloer v. Smith*, 132 N.C. App. 569, 573, 512 S.E.2d 779, 782 (1999) (imposing costs for reconvening deposition where

witness refused to answer questions and witness's counsel supplied answers during first deposition).

{11}     The court may order a party to pay "the reasonable costs, including attorneys' fees[,] incurred . . . in a proceeding in which [a party] has failed to comply with a court order." *Daniels*, 320 N.C. at 674, 360 S.E.2d 776.  The court may also dismiss an action for repeated failure to obey court orders. *See Patterson v. Sweatt*, 146 N.C. App. 351, 358–59, 553 S.E.2d 404, 409–10 (affirming dismissal of action with reasonable costs and attorneys' fees for, *inter alia*, multiple violations of court orders on discovery).  If the court's inherent authority includes dismissing actions and awarding costs and reasonable attorneys' fees, this court concludes that the court may impose lesser sanctions under that authority for violations of its orders. *Cf. Minor v. Minor*, 62 N.C. App. 750, 752, 303 S.E.2d 397, 399 (noting authority to dismiss a case also permits dismissing motions in support of the case).  Imposing fees or costs is a lesser sanction than striking a pleading.  When sanctioning a party under its inherent authority, the court must weigh the circumstances of each case and choose a sanction that, in the court's judgment, "properly takes into account the severity of the party's disobedience." *Id.* at 357, 553 S.E.2d at 409.

## III.     FINDINGS OF FACT

{12}     The court now makes findings of fact regarding the specific sanctions imposed on Rivera and LogicBit in Section IV of this Order.

### A. Prior Court Orders and Proceedings

{13}     On June 1, 2012, the court entered its First Amended Protective Order ("Protective Order"). The Order reflects that it was by the consent of the Parties. Defendants much later contended that they did not consent to the Protective Order and have asked that it be set aside, but they did not advise the court of any such lack of consent close to the time it entered the Protective Order.  At all times relevant to this Order, the Protective Order remained in force, no Party had asked

that it be set aside, and no Party had asked that any document or other matter be released from the provisions and restrictions of the Protective Order.

{14}  The Protective Order recited that it was entered because "certain information or documents sought to be produced during discovery . . . may include confidential information" protected by Rule 26(c).  (First Amended Protective Order (hereinafter "Protective Order") 1.)  The Protective Order applied to "use of all produced documents . . . information, . . . and all copies, abstracts, digests, notes, and summaries thereof."  (Protective Order 1.)  The Protective Order permitted either Party to deem as "Confidential" or "Confidential – Attorneys' Eyes Only" any material that the Party, in good faith, believed contained trade secrets or other confidential material.  (Protective Order 2.)  Any materials produced in the case, even if not designated confidential, could be used "only for the prosecution or defense of" the case and "not . . . for any business or competitive purpose or *any other purpose whatsoever.*"  (Protective Order 5–6 (emphasis added).)  Notwithstanding these restrictions, either Party could challenge another Party's confidentiality designations by seeking an order compelling disclosure or discovery without the designation.  (Protective Order 5.)  Upon such a challenge, the Party designating a document as confidential has "the burden to demonstrate the need for the [confidentiality] designation of such materials."  (Protective Order 5.)

{15}  Earlier in this case, the court has considered other discovery matters unrelated to the Protective Order, including whether Defendants complied with their production obligations.  In Orders dated June 5, 2013 and July 10, 2013, the findings of which are incorporated herein and not repeated, the court imposed monetary sanctions on all Defendants, but sanctioned Defendants The Doan Law Firm, LLP and Doan Law, LLP (collectively "Doan Law") more severely than Rivera and LogicBit.  Rivera and LogicBit promptly paid the monetary sanctions imposed upon them.

{16}  This case was set for trial on October 7, 2013.  As a result of discussions during an initial pre-trial conference, the court ordered a settlement conference before the Honorable John R. Jolly, Jr., Chief Special Superior Court

Judge for Complex Business Cases, to be held on October 2, 2013. The conference was convened. Shortly before midnight that day, OTB filed an emergency motion, supported by documentary exhibits, detailing a series of internet postings Rivera published on October 1, 2013 and of which OTB learned during the settlement conference.

{17} OTB's filings, supported by affidavit, demonstrated clearly that Rivera had made these postings, that they were made with the use of documents produced in discovery and subject to the Protective Order, that they had received immediate and widespread distribution in the marketplace, and that appropriate action should be taken to address the clear violation of the court's Protective Order and mitigate the impact of that violation.

{18} Because of the immediate and widespread distribution of the internet postings, the court convened a hearing on October 3, 2013 at which counsel for all Parties appeared. No Party contended then or contends now that anyone other than Rivera made the internet postings. Similarly, no Party contested then or contests now that Rivera did not use a document produced in discovery that was subject to the Protective Order in making the postings. The fact that the Protective Order was violated was then and remains now palpably clear.

{19} The court entered an Order, dated October 4, 2014, indicating it found that Rivera violated the Protective Order by using an e-mail produced in discovery for a purpose other than prosecuting or defending this case. While the document admittedly was not marked "Confidential" or subject to the more restrictive "Attorneys' Eyes Only" provisions of the Protective Order, it bore a Bates stamp and was clearly a document produced in discovery covered by the Protective Order's restriction that it not be used for business or competitive purpose or any other purpose unrelated to the litigation of this case. Rivera's use falls firmly within these proscriptions.

{20} The October 4th Order did not impose sanctions, direct Defendants to show cause why they should not be held in contempt, or otherwise indicate that the court would elect to move forward with any contempt proceedings.

{21}    Rather, the court sought to mitigate potential damage arising from the violations of its Order and reiterate to Rivera and LogicBit that they must comply with that Order.  The court was motivated by protecting its own integrity, not by any desire to favor one Party to the litigation.  Pursuant to its inherent authority, the court directed certain remedial action to compel compliance with the Protective Order, limited to ordering Rivera and LogicBit to "remove each and every instance in which they disclosed to anyone in any way any allegation based on any material governed by the Protective Order . . . other than disclosures to counsel, experts, or other authorized by the Protective Order" and to "make best efforts to disclose in writing . . . to counsel for Plaintiff each and every instance that they disclosed, to anyone in any way, the Discovery Materials or made allegations or statements based solely on such Discovery Materials, other than disclosures made to counsel, experts, or others authorized by the Protective Order."

{22}    The court further ordered that OTB would be allowed to take limited discovery restricted to the circumstances of the postings and their removal.  The court expressly deferred any further consideration of sanctions or contempt pending completion of this discovery and supplemental briefing.

{23}    On October 4, 2013, Defendants filed a Notice of Appeal from the court's Order entered earlier that day.  Apparently assuming their Notice of Appeal stayed proceedings in this court, Defendants did not participate in discovery on the timetable the court ordered.  Defendants later filed a motion with this court to stay proceedings pending the appeal.  The court denied that motion because Defendants improperly appealed from an interlocutory order.  Defendants then sought immediate relief from the Court of Appeals (and in doing so did not fairly characterize this court's October 4, 2014 Order).  The Court of Appeals denied that request and declined to stay proceedings in this court.

{24}    The court then granted Defendants further time to comply with their discovery obligations pursuant to the October 4th Order and established new discovery and briefing deadlines on OTB's Sanctions Motions.

{25}    The Parties submitted briefs in accordance with that schedule. Plaintiff filed affidavits and excerpts of depositions. After Defendants complained that these affidavits and Plaintiff's briefs either misstated facts or interjected irrelevant and prejudicial matters, the court offered Rivera the opportunity to file a supplemental affidavit in rebuttal and permitted Defendants to file a surreply brief. Defendants filed a surreply brief, but did not file any affidavit.

{26}    By its January 30, 2014 Order, the court advised the Parties that it would not proceed with any contempt proceedings and would limit its further consideration of sanctions to potentially sanctioning Rivera and LogicBit. The court later indicated that any sanctions it may order would not grant Plaintiff's request that it conclusively establish Defendants' liability for trade secret misappropriation, and the court would not relieve OTB of its burden to prove that the information it contends Defendants improperly obtained constitutes protectable trade secrets.

{27}    By its January 30, 2014 Order, the court set the Motions for hearing and indicated that its consideration would be limited to the written record and oral argument. In advance of this hearing Defendants suggested that additional oral testimony would be appropriate for and necessary to the court's determination. The court then afforded Defendants an opportunity to tender such additional testimony. No such tender has been made.

{28}    On February 18, 2014, the court heard oral argument, which was attended by counsel, Plaintiff's representatives, and Rivera. The court gave all Parties full and adequate opportunity to be heard at the hearing.

B.  Rivera's Use of Discovery Materials

{29}    The internet postings at issue relate to one particular e-mail produced by OTB in discovery. The e-mail was not specifically designated as confidential when it was originally produced, but it bore a Bates number and was undoubtedly produced by OTB in discovery. Under the Protective Order that e-mail could be

used only for defending or prosecuting this case and not for any other purpose, including specifically a business or competitive purpose.

{30}     OTB appears later to have designated the e-mail as "Confidential" under the Protective Order in filings made in support of its Sanctions Motions, but did not seek leave of court before filing the e-mail under seal.  The e-mail supplied to the court does not bear a "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" legend.

{31}     In September 2013, Ms. Yuying "Annie" Zhang ("Zhang"), a part owner of LogicBit who lives with Rivera, began reviewing discovery materials while preparing for trial.  After finding a paper copy of the e-mail, Ms. Zhang typed a hyperlink from the e-mail into a web browser.  Ms. Zhang indicates that the hyperlink enabled her to download a large .zip folder containing confidential information about Doan Law's clients.  The record demonstrates that those files were originally created to transfer client data across software platforms when Doan Law transitioned from using TimeMatters with BK*express* (OTB's product) to using HoudiniESQ (LogicBit's product).

{32}     Ms. Zhang told Rivera about the files.  After reviewing the e-mail, Rivera notified his counsel and James Doan, a partner in Doan Law, about the files and his concerns regarding a possible data breach.[5]  Rivera then notified the California Attorney General of his belief that OTB had compromised confidential consumer data.

{33}     Rivera also authored blog posts describing the e-mail and OTB's alleged data breach.  Rivera posted those comments on LogicBit's and HoudiniESQ's website, created a short YouTube video about the alleged data breach, linked to the blog posts in numerous LinkedIn groups of bankruptcy attorneys, and "tweeted" about the posts on multiple Twitter accounts.  In some of

---

[5] The Parties dispute whether Rivera's statements were false or defamatory, and that issue is not before the court.  Rivera's subjective belief and his decision to express opinions publicly about OTB or its agents is relevant to whether the e-mail was used for business or competitive reasons in clear violation of the Protective Order, however.

these postings, Rivera recreated the actual e-mail but obscured the hyperlinks to the files.

{34}   The Parties dispute whether the record proves that Rivera was specifically aware that the court entered a Protective Order restricting use of discovery materials.  There are documents suggesting that Rivera, at a minimum, knew the court had restricted access to certain discovery materials to attorneys only and that he was not allowed access to those materials.  Rivera insists that he did not knowingly violate the Protective Order's restriction on the use of discovery materials.   He also denies that he made the postings to achieve any leverage over OTB in settlement negotiations the court ordered and claims the timing of the postings and the settlement conference is merely coincidental.  Rivera claims his purpose was to spur OTB or Doan Law to remove the files containing the sensitive data from the internet.  There is no evidence that Rivera contacted OTB about removing the hyperlinked files before making his internet postings.

{35}   Gregory Doan, a partner in Doan Law, claims he was unaware of Rivera's plan to contact the California Attorney General and was furious with Rivera for doing so because of the reputational harm his law firm would likely suffer.  Doan's testimony undercuts Rivera's self-portrayal as an innocent whistleblower concerned solely with consumers' data security.  This testimony, along with the content and widespread dissemination of the postings, raises substantial questions of whether Rivera's conduct was an intentional attack on OTB's professional reputation.  The court need not presently resolve that question.

{36}   While the court believes the record could support a finding to the contrary, for purposes of its consideration of appropriate sanctions, the court proceeds on the basis that Rivera did not act intentionally, knowingly, and flagrantly to disregard the Protective Order.  He did, however, clearly use the e-mail in a manner expressly prohibited by the Protective Order.

{37}   On October 7, 2013, Rivera filed an affidavit in which he testified that he removed many of the internet postings subject to the court's October 4th Order.  In later deposition testimony, Rivera acknowledges that he could not remove every

posting because he did not control some of the websites where he made the postings. The court does not find that further conduct by Rivera after October 4, 2013 violated the Protective Order. Rather, as noted at the hearing, the court finds that Rivera took immediate and adequate action to take down or remove all internet postings in compliance with the court's October 4, 2013 Order.

C. <u>Findings Regarding Adequacy and Necessity of Sanctions Imposed Below</u>

{38}    The court has considered imposing lesser sanctions available under Rules 37 and the court's inherent authority, including but not limited to attorney's fees and costs, warnings, censures, reprimands, adverse instructions, and other sanctions less severe than dismissal.

{39}    After carefully weighing the unique circumstances of this case, including but not limited to the court's prior imposition of sanctions against Rivera and LogicBit for abuses of the discovery process, the severity of the current violation of the Protective Order, and Defendants' timely response to the corrective action mandated by the court's October 4, 2013 Order, the court concludes that the sanctions imposed below are reasonable, necessary, and justified under the circumstances. In light of all the circumstances considered, lesser sanctions would not be appropriate.

{40}    In its discretion, the court further concludes the sanctions imposed below and other circumstances in this case, including the need for this matter to proceed to trial on schedule and Rivera's immediate efforts to remove the offending internet postings, make an award of reasonable expenses and attorney's fees unjust within the meaning of Rule 37.

{41}    In its discretion, the court determines not to strike Rivera and LogicBit's Answers and Counterclaims in their entirety, even though the court has the authority to do so. The court will, however, strike portions of them.

## IV.    CONCLUSIONS OF LAW

{42}    The court makes the following conclusions of law in support of its imposition of sanctions:

{43}    The Protective Order is "an order to provide or permit discovery" within the meaning of Rule 37.

{44}    Rule 37 provides authority for the court to sanction Rivera and LogicBit for violations of the Protective Order.

{45}    The court's inherent authority permits sanctioning Rivera and LogicBit for violating the Protective Order.

{46}    The sanctions imposed below are among those allowed under Rule 37 and the court's inherent authority.

{47}    The court has considered the full range of available sanctions and determines the sanctions imposed below are reasonable, necessary, and justified in light of the particular facts and circumstances of this case.

{48}    Rivera and LogicBit were notified of the factual basis for the sanctions sought, so imposing the following sanctions does not violate their Due Process rights.

{49}    Rivera and LogicBit were given a full and fair opportunity to be heard before the imposition of the following sanctions, so imposing them does not violate their Due Process rights.

## V.    SANCTIONS IMPOSED ON RIVERA AND LOGICBIT

{50}    After carefully considering all of the briefs, affidavits, documentary evidence, deposition testimony submitted, and the arguments of counsel at the hearing on February 18, 2014, and considering and balancing all factors as discussed above, the court imposes the following sanctions:

1. The following portions of Rivera's and LogicBit's Answers and Counterclaims should be and hereby are stricken:

a. All of Rivera's and LogicBit's Counterclaims against OTB, including their counterclaims for misappropriation of trade secrets, civil conspiracy, unfair and deceptive trade practices, and abuse of process;

b. All of Rivera's and LogicBit's Affirmative Defenses to OTB's claims, except for the Fifth Defense of unclean hands.

2. Plaintiff's requests for other sanctions, including attorney's fees and costs, are DENIED.

IT IS SO ORDERED this 20th day of March, 2014.