ROANE-BARKER v. SOUTHEASTERN HOSPITAL SUPPLY CORP.

[99 N.C. App. 30 (1990)]

mine if the defendant has established purposeful discrimina-
tion. Since the trial court's findings will depend on credibility,
a reviewing court should give those findings great deference.

*Id.* at 254-55, 368 S.E.2d at 840.

Here, there are other relevant circumstances to be considered.
The prosecutor accepted three out of five potential black jurors
and accepted a black alternate. The prosecutor used three peremp-
tory challenges to excuse two black jurors and one white juror.
The white juror and one of the black jurors were excused because
they knew the defense attorney. The other black juror was excused
because "she had a hard look on her face, and . . . she made
me [prosecutor] feel uncomfortable the way she was looking. She
just worried me the way she was looking." The prosecutor further
stated that race did not play a role in his excusing the two black
jurors. The trial court then found that the peremptory challenges
were exercised without racial prejudice. On this record, we find
no evidence of invidious discrimination and conclude that the trial
court did not err in refusing to grant defendant's motion.

No error.

Judges PHILLIPS and ORR concur.

———————

ROANE-BARKER, PLAINTIFF/CROSS-APPELLANT v. SOUTHEASTERN HOSPITAL
SUPPLY CORPORATION, DEFENDANT/APPELLANT

No. 8910SC1185

(Filed 19 June 1990)

1. **Rules of Civil Procedure § 37 (NCI3d) — failure to produce
   requested documents — sanctions properly imposed**
   The trial court did not abuse its discretion in awarding
   sanctions where it was clear that defendant was dilatory and
   disobeyed the order of the trial court to produce the documents
   requested, and at no time prior to imposition of sanctions
   did defendant formally object on the ground of confidentiality
   or seek a protective order from the court. Moreover, the sanc-
   tion of striking defendant's answer and counterclaim, though

**ROANE-BARKER v. SOUTHEASTERN HOSPITAL SUPPLY CORP.**

[99 N.C. App. 30 (1990)]

severe, was nevertheless proper, since it was expressly author-
ized by statute, and plaintiff was prejudiced by the expense
and delay caused by defendant's failure to produce requested
documents.

**Am Jur 2d, Depositions and Discovery §§ 390-392.**

2. **Rules of Civil Procedure §§ 37, 55.1 (NCI3d) — sanctions for
   failure to make discovery — entry of default — requested
   documents produced — no ground to set aside entry of default**

   Where defendant failed to produce documents requested
   by plaintiff and ordered by the court, the court struck defend-
   ant's answer and counterclaim, and the trial court then entered
   default against defendant, defendant did not thereafter, by
   producing the required documents, show good cause to set
   aside the default.

**Am Jur 2d, Depositions and Discovery §§ 390-392.**

3. **Contracts § 33 (NCI3d) — malicious interference with contract —
   plaintiff's employees hired by defendant — employee placed in
   same territory — interference with plaintiff's accounts**

   In an action for malicious interference with contract, the
   trial court did not err in refusing to grant defendant's motions
   to dismiss, for summary judgment, or for directed verdict
   where plaintiff alleged that three of its salesmen, hired by
   defendant and placed in their former territories, did solicit
   plaintiff's customers, and that defendant further induced the
   salesmen to interfere with plaintiff's existing accounts.

**Am Jur 2d, Interference §§ 39-41.**

4. **Contracts § 36 (NCI3d) — malicious interference with contract —
   lost profits — evidence admissible**

   In an action for malicious interference with contract and
   unfair trade practices where plaintiff alleged that defendant
   hired three of its employees and placed them in their former
   territories, plaintiff was entitled to show evidence of its lost
   profits by comparing its past history of profits with gross
   sales of plaintiff's former salesmen while working for defendant.

**Am Jur 2d, Interference §§ 57, 58.**

5. **Unfair Competition § 1 (NCI3d) — malicious interference with contract — unfair or deceptive trade practice**

   Because defendant's acts in hiring three of plaintiff's salesmen and placing them in their former territories did amount to tortious interference with contract, the trial court did not err in finding an unfair or deceptive trade practice, trebling the jury verdict, awarding costs, and awarding attorney's fees.

   **Am Jur 2d, Interference §§ 31, 57, 58; Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 697, 735.**

APPEAL by defendant from a judgment entered 14 April 1989 by *Judge Donald W. Stephens* in WAKE County Superior Court. Plaintiff cross-appeals. Heard in the Court of Appeals 4 May 1990.

*Maupin, Taylor, Ellis and Adams, P.A., by James A. Roberts, III, and Hunter, Wharton & Lynch, by John V. Hunter, III, for plaintiff-appellee/cross-appellant.*

*Womble Carlyle Sandridge & Rice, by Donald L. Smith, William E. Moore, Jr. and Hoyt G. Tessener, for defendant-appellant.*

LEWIS, Judge.

Defendant appeals from an order sanctioning it for abuse of discovery. Pursuant to Rule G.S. 1A-1, Rule 37(b)(2)c & e, defendant's answer and counterclaims were stricken and it was assessed attorney's fees. The events leading up to these sanctions are as follows:

On 9 July 1986, plaintiff filed suit against defendant alleging malicious interference with contract, unfair and deceptive trade practices, misappropriation of trade secrets and unfair competition.

Plaintiff is engaged in the business of selling medical supplies and equipment throughout North Carolina and South Carolina. Defendant is a direct competitor of plaintiff in both North Carolina and South Carolina.

On 15 May 1986 defendant hired three of plaintiff's salesmen. ("A, B, & C"). Defendant placed these three salesmen in the same sales territory that they were previously servicing for plaintiff. Salesmen A, B, and C all had employment contracts with plaintiff which they signed when they joined plaintiff. These contracts contained covenants not to compete. Initially, A, B, and C were parties

to this action; however, the claims against them were dismissed and only defendant Southeastern remains.

On 19 January 1987, plaintiff requested in its Second Request for Production of Documents all sales analysis reports for A, B & C. After serving the Request on the defendant, plaintiff noticed several depositions. In a letter dated 5 March 1987 counsel for plaintiff expressed concern that the documents had not yet been produced and that these documents were necessary for an upcoming deposition. Defendant responded by letter on 11 March 1987 stating, "I will have something on the documents very soon and certainly within time for these depositions." Plaintiff's counsel's affidavit indicates that on 20 March 1987, plaintiff received oral reassurances that the documents were going to be produced in the near future. When these documents were not produced, the depositions were cancelled.

On 3 April 1987, plaintiff filed its first Motion to Compel and Motion for Sanctions. On 8 April 1987, defendant filed its Response to Request for Production of Documents. The Response objected to plaintiff's request on the grounds that the documents requested were not sufficiently identified and that the request was too broad because it included all customers ever serviced by A, B & C while employed with plaintiff, and that all documents are not relevant nor likely to lead to relevant evidence. Defendant on 8 April 1987 also produced five full boxes of computer generated sales records at its office. Defendant's counsel stated that it would have to review these documents before turning them over to plaintiff. After a brief examination of these records, plaintiff told defendant that these were not the documents requested and that they were not in a readable form. Defendant's counsel reiterated its position that the documents requested were beyond the scope of discovery and that if plaintiff would identify the specific accounts claimed to have been diverted by defendant, he would provide information for those accounts.

On 9 April 1987, plaintiff again wrote defendant expressing concern about defendant's failure to produce the requested documents. On 14 April 1987, defendant responded with a letter containing the following excerpt:

> [M]y clients are having difficulty retrieving documents which deal with the customers serviced by these salespeople with [plaintiff] prior to their having come to work for [defendant].

The reason for its difficulty is two-fold: (1) My clients are unsure of the clients serviced by these salespeople prior to their having come to work for [defendant] and (2) These same customers would have been serviced by [plaintiff] . . . If you would supply us with a list of the specific doctors or other medical accounts which you would like to have the information on, I think this would be of great service and aid to us in determining whether or not such documents exist. I am requesting that you provide us with a list of the specific accounts which you requested documents on.

Plaintiff responded to defendant's letter by refusing to produce a list of plaintiff's accounts or customers and further stating, "As we have discussed on several occasions, Jim Williams, Southeastern's Director of Alternate Care Development identified several documents in his deposition which could be examined to determine those customers which had switched their accounts from Roane-Barker to Southeastern as a result of the solicitations of the three [salesmen]." Plaintiff went on to pinpoint exact pages in Williams' deposition which identified the specific reports plaintiff was asking to be produced.

On 21 May 1987, Southeastern's counsel wrote that he was serving interrogatories "to facilitate the production of documents." Plaintiff filed timely answers identifying the specific customers which plaintiff contended had been unlawfully solicited by the defendant. Counsel for defendant then agreed to produce the sales data for the accounts identified by the plaintiff and stated that there was no need for plaintiff's hearing on the Motion to Compel and for Sanctions scheduled for 24 May 1987. The parties entered into a consent order which provided that "the documents requested in plaintiff's Second Request for Production of Documents to Southeastern Hospital Supply shall be reproduced at the office of counsel for plaintiff no later than 8 July 1987." This consent order was entered into by Judge Henry W. Hight, Jr. A few days before this deadline, defendant requested an extension of time to produce the documents.

On 10 August 1987, plaintiff's counsel wrote defendant concerning the production of the documents. Plaintiff stated that it required defendant to produce the documents by 13 August 1987 as promised or it would again seek sanctions. On 12 August 1987, plaintiff received certain documents from defendant which defend-

ant thought were responsive to plaintiff's request. However, plaintiff indicated that the documents were not responsive to its request and, on 14 August 1987, plaintiff again moved to compel discovery and for sanctions.

Judge James H. Pou Bailey heard plaintiff's motion on 20 August 1987. On 21 August 1987, Judge Bailey entered an order striking defendant's answer and counterclaims, required defendant to produce the requested documents by 1 September 1987, and assessed defendant plaintiff's attorneys' fees incurred in obtaining compliance with its request for production. On 28 August 1987, defendant produced all sales analysis reports for A, B, and C.

On 1 March 1988, plaintiff obtained an entry of default. On 3 March 1988, counsel for defendant filed a notice of substitution of counsel, motions to set aside default, for protective order, and for relief from the court's previous orders. On 15 March 1988, defendant filed Motions for summary judgment, and to set aside the order for payment of attorneys' fees.

The motions came before Judge Robert L. Farmer on 25 May 1988. Judge Farmer denied defendant's motions to set aside default, for relief from orders, and for summary judgment. On 19 July 1988, defendant filed motions to revise order pursuant to G.S. 1A-1, Rule 54(b) and for protective order (not related to the plaintiff's second request for production of documents). Judge James H. Pou Bailey heard the motions and allowed defendant's motion for protective order and revised the award of attorneys' fees, but refused to reinstate defendant's answer.

On 9 March 1989, defendant filed a motion to reconsider its motion for summary judgment and for partial summary judgment on damages. The motion to reconsider was denied. On 27 March 1989, defendant then filed a motion to set aside default and a motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6), both of which were denied.

The case was tried before a jury on the issue of damages. A verdict was returned for the plaintiff on 4 April 1989. On 10 April 1989 defendant filed a motion for judgment notwithstanding the verdict or in the alternative, a motion for a new trial. The court found an unfair trade practice and judgment was entered against defendant for trebled damages. On 14 April 1989, the court entered an order awarding plaintiff attorneys' fees. On 17 April

ROANE-BARKER v. SOUTHEASTERN HOSPITAL SUPPLY CORP.

[99 N.C. App. 30 (1990)]

1989, the trial court denied defendant's motion for JNOV, or in the alternative for a new trial and taxed expert witness fees against defendant. Defendant gave notice of appeal and plaintiff cross-appealed.

I. *Imposition of Discovery Sanctions.*

[1] It should be noted at the outset that sanctions under G.S. 1A-1, Rule 37, are within the sound discretion of the trial court. "Broad discretion must be given to the trial judge with regard to sanctions." *Martin v. Solon Automated Services, Inc.*, 84 N.C. App. 197, 201, 352 S.E.2d 278, 281, *disc. rev. denied and appeal dismissed*, 319 N.C. 674, 356 S.E.2d 789 (1987), *quoting* 8 Wright & Miller, *Federal Practice & Procedure: Civil* § 2284 at 765 (1970). "The choice of sanctions under Rule 37 lies within the court's discretion and will not be overturned on appeal absent a showing of abuse of that discretion." *Routh v. Weaver*, 67 N.C. App. 426, 429, 313 S.E.2d 793, 795 (1984); *See also Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 603 (1982) (trial judge's discretion is "practically unlimited").

After carefully reviewing the record, we find that the trial court did not abuse its discretion in awarding sanctions. It is clear that appellant was dilatory and disobeyed the order of the trial court to produce the documents requested. Appellants admitted in open court at the hearing that they had not complied with the plaintiff's request. Defendant now argues that the reason they did not comply with the request or the court's order is because the documents requested contained confidential information. However, at no time prior to the imposition of sanctions did defendant formally object on the grounds of confidentiality or seek a protective order from the court. Defendant argues that it "interpreted the proper scope of the requests to require only sales figures for accounts Plaintiff claimed were 'diverted.'" However, the consent order entered into by the parties expressly agreed that defendant would comply with plaintiff's second request for the production of documents. Defendant may not unilaterally "interpret" the relevant scope of its response and only provide that information it considers discoverable. The parties agreed and consented to the order entered by Judge Hight and that order expressly required defendants to comply with plaintiff's second request. Thus, appellants were subject to the imposition of sanctions for violation of the court's previous order. *See Martin v. Solon Automated Services,*

## ROANE-BARKER v. SOUTHEASTERN HOSPITAL SUPPLY CORP.

[99 N.C. App. 30 (1990)]

*Inc., supra,* and *Routh v. Weaver, supra* (appellants subject to sanctions for failing to comply with earlier court orders requiring compliance with discovery requests).

We must now determine whether the sanctions imposed were proper. Although the sanctions imposed were severe, they are among those expressly authorized by statute. Absent specific evidence of injustice, we cannot hold they constitute an abuse of discretion. *Martin, supra,* at 201, 352 S.E.2d 281; *First Citizens Bank v. Powell,* 58 N.C. App. 229, 292 S.E.2d 731 (1982), *aff'd,* 307 N.C. 467, 298 S.E.2d 386 (1983). Defendant argues that injustice resulted from the entry of default because plaintiff was not prejudiced by its actions because trial had not been calendared and plaintiff had ample time to examine and analyze the information. However, Rule 37 does not require the plaintiff to show that it was prejudiced by the defendant's actions in order to obtain sanctions for abuse of discovery. The proximity of the discovery abuse to the date of trial is one factor the trial court may consider when determining whether or not to award sanctions. *See Hayes v. Browne,* 76 N.C. App. 98, 331 S.E.2d 763 (1985), *disc. rev. denied,* 315 N.C. 587, 341 S.E.2d 25 (1986) (sanctions appropriate when plaintiff failed to complete discovery 10 days before trial). Plaintiff twice sought court intervention to obtain compliance with its requests. Some of plaintiff's depositions were cancelled due to defendant's failure to produce the requested documents, resulting in delay of its trial preparation. Furthermore, plaintiff was forced to defend numerous motions made by defendant seeking relief from Judge Bailey's orders. This expense and these delays clearly prejudiced the plaintiff. The sanctions ordered were within the discretion of the trial court.

II. *Refusal to Set Aside Default.*

[2] Defendant also appeals the refusal of the trial court to set aside entry of default pursuant to G.S. 1A-1, Rule 55(d). Defendant has the burden of establishing "good cause" to set aside the entry of default and refusal to set aside is within the sound discretion of the trial court. *Britt v. Georgia-Pacific Corp.,* 46 N.C. App. 107, 108, 264 S.E.2d 395, 397 (1980); *Bailey v. Gooding,* 60 N.C. App. 459, 463, 299 S.E.2d 267, 270, *disc. rev. denied,* 308 N.C. 675, 304 S.E.2d 753 (1983). The entry of default against defendant was the direct result of the sanctions imposed against it under Rule 37. Defendant argues that because it ultimately produced the requested documents ordered by the court, it has shown good

cause to set aside default and cites *Stone v. Martin*, 69 N.C. App. 650, 318 S.E.2d 108 (1984). However, in *Stone*, the defendants had refused to answer discovery requests based on their reasonable interpretation of existing case law. After sanctions were imposed, appellate decisions subsequently restricted the scope of defendant's alleged privilege. Coupled with the defendant's willingness to comply with these adverse decisions, the change in law was deemed a significantly changed circumstance to merit modification of the earlier court order. 69 N.C. App. at 653, 318 S.E.2d at 111. Judge Greene, in his concurrence in *Martin, supra*, distinguished *Stone* in a manner applicable to the circumstances of this case:

> The 'changed' circumstances in the instant case do not rise to the level upheld by this Court in *Stone*. The defendants in *Stone* stood willing to comply with discovery as the result of a changed circumstance, the change in law. Defendants here argue their alleged willingness to comply is itself the changed circumstance. Such an interpretation invites improper manipulation of the 'changed circumstances' standard. To strike Judge Bailey's sanctions simply because defendants belatedly make effort to comply would reward their delay of discovery. This defeats the purpose of sanctions under N.C.R. Civ. P. 37(b). Therefore, Judge Bailey had ample discretion to rule no legally significant circumstances had changed.

*Martin v. Solon Automated Services, Inc.*, 84 N.C. App. at 204, 352 S.E.2d at 282 (Greene, J., concurring). We find without further discussion that the trial court did not abuse its discretion in refusing to set aside entry of default.

> III. *Denial of Defendant's Motions to Dismiss for Failure to State a Claim, for Summary Judgment and for Directed Verdict.*

[3] Defendant contends that the trial court erred by failing to enter judgment as a matter of law against plaintiff. Defendant argues that the "mere" hiring of plaintiff's employees by a competitor and then placing them in their former territories, standing alone, is not actionable. *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 367 S.E.2d 647 (1988), *reh'ring denied*, 322 N.C. 486, 370 S.E.2d 227 (1988), is the primary case relied upon by defendant. Our Supreme Court held in *Hooks* that hiring the competitor's former employees and assigning them to the same territory they had worked in their prior employment was not by itself sufficient

to state a claim for tortious interference with contract. *Id.* In *Hooks* the plaintiff had alleged that because defendant had hired fifteen of its employees that it was unable to service its policyholders or collect its insurance premiums. The Court found that this allegation was not enough to make out a claim for tortious interference, specifically stating that "[t]he complaint does not allege that the defendant solicited or serviced policyholders of [plaintiff]. Neither does the complaint allege that the defendant directly interfered with existing policies. Rather, it alleges that because the defendant induced certain of the plaintiff's employees to change employers, he generally 'interfered with plaintiff's business.' " *Hooks, supra,* at 224, 367 S.E.2d 652. The court also emphasized that "[t]he privilege [to interfere] is conditional or qualified; that is, it is lost if exercised for a wrong purpose. In general, a wrong purpose exists where the act is done other than as a reasonable and *bona fide* attempt to protect the interest of the defendant which is involved." *Id.* at 220, 367 S.E.2d at 650 (quoting *Smith v. Ford Motor Co.,* 289 N.C. 71, 91, 221 S.E.2d 282, 294 (1976)).

The Supreme Court made this qualification clear in *United Laboratories, Inc. v. Kuykendall,* 322 N.C. 643, 370 S.E.2d 375 (1988). In *United Laboratories* defendants had hired plaintiff's employee and placed him in the same sales territory he had previously serviced for the plaintiff. Unlike the plaintiff in *Hooks,* United Laboratories alleged that the defendants had hired its salesman away from it, that this former salesman had solicited the same customers he had serviced for the plaintiff, and that defendant corporation had agreed to pay all of the salesman's legal expenses incurred in defending an action by plaintiff. *Id.* The Court in *United Laboratories* distinguished *Hooks,* finding defendant's conduct was exercised for a wrongful purpose.

In this case, we find the facts, as alleged in the complaint and deemed admitted by default, more closely approximate *United Laboratories* than *Hooks.* Plaintiff here alleges that the salesmen hired by defendant did solicit plaintiff's customers and further induced the salesmen to interfere with plaintiff's existing accounts. We distinguish *Hooks* and hold that the trial court did not err in refusing to grant defendant's motions to dismiss, for summary judgment, or for directed verdict.

IV. *Denial of Motion for Partial Summary Judgment as to Damages, Admitting Plaintiff's Evidence of Damages and Instructing the Jury.*

**[4]**  Defendant contends that plaintiff's proof of damages was both legally and factually deficient. Defendant argues that plaintiff's proof of damages included speculative evidence of plaintiff's lost profits for all diverted accounts, without regard to defendant's net profits on those accounts. Plaintiff's case is based upon malicious interference with contract, statutory and common law unfair competition and unfair and deceptive trade practices. Unfair and deceptive trade practices and unfair competition claims are neither wholly tortious nor wholly contractual in nature and the measure of damages is broader than common law actions. *Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 230, 232, 314 S.E.2d 582, 584-85, *disc. rev. denied*, 311 N.C. 751, 321 S.E.2d 126 (1984).

Plaintiff was entitled to recover damages which were the natural and probable result of the tortfeasor's misconduct. Plaintiff showed 1. the sales and gross profits made by the salesmen to its customers during their last year of employment with plaintiff; 2. the sales plaintiff made to these same customers during the two-year period after the salesmen were employed with defendant, which was the period of the restrictive covenants; 3. the sales the salesmen made to those same customers during that two-year period on behalf of the defendant.

Defendant's sales were made in the same geographic area and to the same customers as plaintiff's sales would have been. This evidence was both relevant and admissible. It was for the jury to decide how much weight to give such evidence. Plaintiff was entitled to show evidence of its lost profits by comparing its past history of profits with gross sales of plaintiff's former salesmen while working for defendant. *See Mosley & Mosley Builders, Inc. v. Landin, Ltd.*, 87 N.C. App. 438, 446, 361 S.E.2d 608, 613 (1987), *cert. dismissed*, 322 N.C. 607, 370 S.E.2d 416 (1988).

V.  *Refusal to Allow Defendant to Read Case Law to the Jury.*

We summarily dispose of this argument by stating that the trial court did not abuse its discretion in refusing to allow counsel to read case law concerning its liability. Entry of default against the defendant removed the issue of liability from consideration.

ROANE-BARKER v. SOUTHEASTERN HOSPITAL SUPPLY CORP.

[99 N.C. App. 30 (1990)]

VI. *Finding of an Unfair Trade Practice and Unfair Competition and Denial of Motions for JNOV or New Trial.*

[5]   G.S. § 75-1.1(a) provides that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Since the allegations in the complaint were deemed admitted by virtue of the defendant's default, the only issue the court was left to consider was whether the allegations in the complaint amounted to a violation of § 75-1.1(a). In *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 664, 370 S.E.2d 375, 389 (1988), the Court specifically held that tortious interference with a restrictive covenant by a competitor stated a claim for unfair and deceptive trade practices under § 75-1.1. Because defendant's acts did amount to tortious interference with contract, as in *Kuykendall*, the court did not err in finding an unfair or deceptive trade practice, trebling the jury verdict, awarding costs and awarding attorney's fees.

Defendant also argues that the trial court erred when it denied its motion for judgment notwithstanding the verdict or in the alternative, for a new trial. We disagree. Defendant's arguments on this issue all are directed to matters concerning its liability. Again, because of the entry of default against it, defendant was not entitled to defend itself based on affirmative defenses deemed waived when Judge Bailey struck the answer. Denial of JNOV or a new trial was proper.

## PLAINTIFF APPELLANT'S CROSS-APPEAL

Plaintiff cross-appealed only as an alternative if this Court did not affirm the trial court. Because we affirm the trial court, we do not address the matters raised in plaintiff's cross-appeal.

Affirmed.

Judges ORR and GREENE concur.