IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-1055

Filed: 15 May 2018

Mecklenburg County, No. 16 CVS 19851

GEA, INC., VALARIA DEVINE and LESLIE FARKAS, Plaintiffs,

v.

LUXURY AUCTIONS MARKETING, INC. and JEREMY LECLAIR, Defendants.

Appeal by defendants from order entered 10 July 2017 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 March 2018.

*No brief filed for plaintiffs-appellees.*

*Law Offices of Paul Vancil, by Paul Vancil, for defendants-appellants.*

ZACHARY, Judge.

Defendants Luxury Auctions Marketing, Inc. and Jeremy LeClair appeal from the trial court's order imposing sanctions against Luxury and LeClair (together, "Luxury") for failing to comply with a discovery order of the court. We affirm.

**Background**

The litigation at issue arose out of a business dispute between Luxury and plaintiffs GEA, Inc., Leslie Farkas, and Valaria DeVine (together, "GEA"). Ms. DeVine formed GEA and the company 4K&D roughly seventeen years ago as luxury residential auction companies. Ms. DeVine's companies were highly successful, in part due to (1) GEA's ownership of valuable trademarks, (2) GEA's ownership of 47 registered domain sites, and (3) a large customer database that GEA and Ms. DeVine

had assembled over the years. In January 2016, Ms. DeVine hired Mr. LeClair as 4K&D's Director of Operations.

On 25 April 2016, Ms. Devine's husband, Leslie Farkas, formed Luxury. Luxury was formed "to generate new listings for auction and to market the properties that were placed under contract for auction." Five days after Luxury was formed, 4K&D sold all of its tangible assets—specifically, equipment, furniture, and office fixtures—to Luxury.

Shortly after his hire, Mr. LeClair became aware that Ms. DeVine and Mr. Farkas were interested in selling their businesses, and approached them about the possibility of purchasing the companies. The parties entered into a period of discussions and negotiations, culminating in the agreement of Ms. DeVine and Mr. Farkas to sell Luxury to Mr. LeClair. Ms. DeVine and Mr. Farkas retained ownership of GEA.

The parties executed Luxury's sale on 8 August 2016. The sale took the form of a Stock Purchase Agreement, by which Mr. Farkas sold all of his shares in Luxury to Mr. LeClair. GEA then issued revocable, non-exclusive, ten-year licenses to Luxury in certain trademarks, software, and intellectual property. Pursuant to the licenses, Luxury could transact business under GEA's trademark, could use GEA's registered domain site, and could access GEA's valuable customer database. Ms. DeVine and Mr. Farkas agreed to allow Mr. LeClair to defer the entire purchase price by making

annual payments over the ten-year term of the agreement. Among other payment provisions, Luxury "agreed to pay 10% of each gross commission received by [Luxury] for the first ten years of the agreement, . . . for [the] revocable, non-exclusive license Agreement."

Conflict arose between the parties shortly after the purchase, which ultimately led to Luxury filing a complaint against GEA on 3 November 2016. GEA answered and asserted eleven counterclaims against Luxury. Luxury thereafter voluntarily dismissed its claims against GEA, leaving only GEA's counterclaims pending before the trial court.

GEA's counterclaims set forth an array of complicated factual allegations against Mr. LeClair and Luxury and asserted causes of action for, *inter alia*, unpaid royalties and license fees, improper use and transfer of a software license and the customer database, conversion of computers and other GEA property, trademark infringement, conversion, and harassment.

Much of the information pertaining to GEA's counterclaims, and the proof thereof, was alleged to be stored in the various company computers and individual computers used by Luxury's employees[1]. However, after LeClair acquired Luxury, LeClair moved Luxury's offices and, according to GEA, "took all the computer equipment, hard drives, printers, copiers, related equipment and numerous files

---

[1] The parties dispute the ownership of these computers.

containing business and personal information having nothing to do with [Luxury]." Accordingly, GEA served Luxury with a discovery request on 1 March 2017 for inspection of the computers and equipment.

At Mr. LeClair's 8 May 2017 deposition, however, Luxury's counsel informed GEA that Mr. LeClair destroyed the computers after the litigation had commenced. Mr. LeClair testified to the following at his deposition:

> Q.    Do you recall Mr. Farkas making a demand for the return of his personal computer?
>
> A.    I do.
>
> . . .
>
> Q.    Where is that computer today?
>
> A.    That computer has been discarded.
>
> Q.    Where was it discarded?
>
> A.    I believe the Mecklenburg recycling, whatever it's called, recycling, trash dump.
>
> . . .
>
> Q.    Did you discard the computer?
>
> A.    I did.
>
> . . .
>
> Q.    How many computers did you move from the [office]?
>
> A.    I don't have a specific number, but the majority of the computers, if not all.

Q.    There was a server, correct?

A.    Yes.

. . .

Q.    What about the laptops used by [Luxury], where are those?

A.    What about them? Those have been discarded as well.

. . .

Q.    Have all of the computers transported from [the office] been discarded?

A.    Yes.

Mr. LeClair also testified that he knew that GEA sought "return of these computers as part of [the] claims in the litigation":

Q.    You knew that they--that my clients were seeking this--the return of these materials, correct?

MR. VANCIL: 'These materials' being what?

BY MR. LANDRUM:
Q.    The return of these computers, correct?

A.    *I know they were seeking them*; but whether they were--you know, they were owned by LAMI, so whether they were seeking them or not, that's just a . . . *These were our computers owned by us and we had the right to do with them as we pleased.*

Q.    But you knew that these items were disputed in the litigation, correct?

A.      Not by us. I mean, we--well, excuse me, I understand that--*I understand that there was a dispute based on what they had stated versus what we had stated,* yes, I agree with that, yes.

. . .

Q.      . . . *You knew that Ms. DeVine was requesting the return of those computers, correct?*

A.      I also knew that Ms. DeVine was requesting millions of dollars in damages, so, you know, *whatever she was requesting or wanted, to me, at that point, you know, wasn't really a concern.*

In addition, Mr. LeClair repeatedly stated, "I am definitely 100 percent not agreeing to inspect my personal laptop, so you'll have to discuss that with my counsel."

GEA thereafter filed a motion to compel discovery, "specifically the inspection of computers pursuant to Rule 34" of the North Carolina Rules of Civil Procedure, dated 10 May 2017. GEA maintained that Luxury

> ha[s] refused to permit the inspection and, in fact, now claim[s] to have destroyed the computers subject to the Rule 34 request. [GEA] move[s] for an order compelling inspection of the computers or any copies or backups thereof or, in the alternative, [GEA]  move[s] for an order compelling a sworn certification from [Luxury] that no such copies or backups exist and for sanctions for the destruction of the computers, or any copies or backups thereof.

Luxury responded that even though Mr. LeClair discarded the computers, he had "made copies of the files on the discarded computers, and those files are available for inspection on the hard drives in Mr. LeClair's possession." Mr. LeClair had also

kept one computer (the "Accounting Computer") and a large Server, which Mr.

LeClair averred were available for inspection by GEA.

On 12 June 2017, the trial court entered an order (the "12 June Order")

regarding GEA's motion to compel[2]. The 12 June Order provided that

> [Luxury] shall make available for inspection the server, the
> accounting computer, any other computer hardware
> equipment which is the subject of this action, still existing,
> as well as all downloaded and stored contents and data
> from all computers which were destroyed or disposed of by
> [Luxury]. Unless otherwise agreed by the parties, this shall
> occur within twenty (20) days from May 18, 2017.

The parties met for the inspection on 7 June 2017. According to GEA,

> Based on deposition testimony, [GEA] expected [Luxury] to
> produce for inspection the following computers known to
> remain in existence: (1) [the] Server; (2) . . . the "Accounting
> Computer"; (3) two portable external hard drives created
> by former employees . . . (the "Employee Backups"); (4)
> backups of computers created by Jeremy LeClair (the
> "LeClair Backups"); and (5) a laptop used by Mr. LeClair to
> conduct [Luxury] business (the "LeClair Laptop").

Luxury produced for inspection the Accounting Computer, the Employee

Backups, and the Server. However, Luxury did not produce the LeClair Backups or

the LeClair Laptop, and the Server could not be inspected without certain login

credentials. GEA requested the Server's login credentials, but Mr. LeClair

maintained that he did not know the username or password and that the company's

---

[2] The trial court orally rendered the same order on 15 May 2017.

IT employee could not remember them. GEA has since been unable to access the Server. Nonetheless, Luxury has repeatedly requested the return of the reportedly inaccessible server.

On 23 June 2017, GEA filed a Motion to Show Cause to Avoid Contempt, claiming that Luxury had refused to comply with the 12 June Order in that Luxury had (1) failed to provide access to the Server, (2) failed to produce LeClair's backups, and (3) failed to produce LeClair's laptop. In its motion, GEA requested that Luxury "be sanctioned severely for their reprehensible conduct . . . , [and that] the Court should enter default as to [GEA's] conversion claim, permit [GEA] to keep the Server, and order [Luxury] to pay [GEA's] reasonable expenses, including attorney's fees[.]"

The trial court heard GEA's motion to show cause on 28 June 2017. The trial court orally granted GEA's motion and gave Luxury ten days within which to produce the Server's password, Mr. LeClair's laptop, and any other computers or backups in Luxury's possession. The trial court ordered that Luxury be sanctioned if it failed to make such production by 10 July 2017. On 3 July 2017, Luxury filed a Request for Approval to File Motion for Reconsideration and a "Time-Sensitive Motion for *In Camera* Review" of Mr. LeClair's laptop.

By 10 July 2017, Luxury had not provided the Server's login credentials or Mr. LeClair's laptop. Accordingly, the trial court reduced its 28 June bench ruling to writing (the "10 July Order"). The trial court's 10 July Order denied Luxury's request

for reconsideration and *in camera* review, found Luxury to be in violation of the 12 June Order, and affirmed the sanctions. Per the 10 July Order, if by noon of that day Luxury had not complied with the production requirements, "as a sanction for their noncompliance[,]" the trial court ordered that "all of [Luxury's] defenses in this action be stricken and that judgment by default enter in [GEA's] favor and against [Luxury] as to all of [GEA's] claims, with only the issues of injunctive relief and damages remaining for further hearing and/or trial."

Luxury filed a Notice of Inability to Comply with Court's Order on 11 July 2017. Luxury insisted that it was unable to comply with the 10 July Order because it did not have the login credentials to the Server. Luxury also maintained that it could not produce Mr. LeClair's personal laptop because of privacy concerns and the trial court's refusal to conduct an *in camera* review. Luxury filed a notice of appeal on 11 July 2017, and a motion to stay the 10 July Order on 13 July 2017. This Court granted a stay on 14 July 2017.

On appeal, Luxury argues that the trial court committed a variety of errors in its 10 July Order, including that it abused its discretion (1) by failing to consider less drastic sanctions than striking all of Luxury's defenses and entering default; (2) by failing to impose less drastic sanctions; (3) by ordering Luxury to produce the Server password, an impossibility; (4) by finding that Luxury violated the 12 June Order; (5) by ordering production of Mr. LeClair's personal laptop in violation of his right to

privacy; (6) by denying the "Time-Sensitive Motion for *In Camera* Review"; (7) by making an erroneous finding as to Mr. LeClair's credibility and by making a finding as to his credibility in the first instance; and (8) by denying Luxury's Request for Approval to File Motion for Reconsideration. We consider each of Luxury's arguments as relevant to the discussion below.

## Discussion

*I. Grounds for Appellate Review*

The trial court's 10 July Order that imposed sanctions against Luxury is interlocutory. *Vick v. Davis*, 77 N.C. App. 359, 360, 335 S.E.2d 197, 198 (1985). However, the sanctions struck all defenses and entered default against Luxury on each of GEA's claims. "Orders of this type have been described as affecting a substantial right." *Essex Group, Inc. v. Express Wire Servs.*, 157 N.C. App. 360, 362, 578 S.E.2d 705, 707 (2003) (citing *Clark v. Penland*, 146 N.C. App. 288, 291, 552 S.E.2d 243, 245 (2001)). Accordingly, the trial court's order is immediately appealable. *Id.*; *see also Vick*, 77 N.C. App. at 360, 335 S.E.2d at 198 ("[A] party may appeal from an order imposing sanctions by striking his defense and entering judgment as to liability.") (citation omitted); N.C. Gen. Stat. § 1-277(a) (2017); N.C. Gen. Stat. § 7A-27(b)(3)(a) (2017).

*II. Rule 37(b)*

Rule 37(b) of the North Carolina Rules of Civil Procedure grants trial judges the authority to impose sanctions on a party for failure to comply with a discovery order. N.C. Gen. Stat. § 1A-1, Rule 37(b)(2) (2017). Rule 37(b)(2) provides:

> **(2) Sanctions by Court in Which Action is Pending**— If a party . . . fails to obey an order to provide or permit discovery, . . . a judge of the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> > a.  An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> >
> > b.  An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence;
> >
> > c.  An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
> >
> > d.  In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination[.]
> > . . .

N.C. Gen. Stat. § 1A-1, Rule 37(b)(2) (2017).

It is axiomatic that "[o]ne of the primary purposes of the discovery rules is to facilitate the disclosure prior to trial of any unprivileged information that is relevant

and material to the lawsuit" so as to permit the receiving party to adequately prepare her case. *American Tel. & Tel. Co. v. Griffin*, 39 N.C. App. 721, 726, 251 S.E.2d 885, 888, *disc. review denied*, 297 N.C. 304, 254 S.E.2d 921 (1979) (citations omitted). This necessarily includes "the narrowing and sharpening of the basic issues and facts that will require trial." *Id.* (citations omitted). The objectives of Rule 37(b) focus " 'not on gamesmanship, but on expeditious handling of factual information before trial so that the critical issues may be presented at trial unencumbered by unnecessary or specious issues[.]' " *F.E. Davis Plumbing Co. v. Ingleside West Associates*, 37 N.C. App. 149, 152, 245 S.E.2d 555, 557 (1978) (quoting *Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976)). "Rule 37 contemplates that these objectives can be accomplished only if the court has the means and power to compel recalcitrant parties to abide by the rules of discovery." *F.E. Davis Plumbing Co.*, 37 N.C. App. at 153, 245 S.E.2d at 557. Accordingly, trial courts are vested with broad discretion in ordering sanctions under Rule 37(b). *American Tel. & Tel. Co.*, 39 N.C. App. at 727, 251 S.E.2d at 888 (citations omitted).

Not only is the decision to impose Rule 37(b) sanctions within the sound discretion of the trial court, but so too is the choice of Rule 37(b) sanctions to impose. *Brooks v. Giesey*, 106 N.C. App. 586, 592, 418 S.E.2d 236, 239 (1992) (citing *Roane-Barker v. Southeastern Hospital Supply Corp.*, 99 N.C. App. 30, 36, 392 S.E.2d 663, 667 (1990), *disc. review denied*, 328 N.C. 93, 402 S.E.2d 418 (1991)). This Court will

not overturn a trial court's imposition of sanctions under Rule 37(b) absent a showing of abuse of that discretion. *Id.* "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *Hursey v. Homes by Design, Inc.*, 121 N.C. App. 175, 177, 464 S.E.2d 504, 505 (1995) (citing *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

## *A.*

First, Luxury argues that the trial court erred because it failed to make findings of fact and conclusions of law that it considered lesser sanctions than the striking of defenses and entry of default. We find no error.

Rule 37 does not limit a trial court's determination of the appropriateness of imposing a particular Rule 37(b) sanction. Nevertheless, our courts have held that "if the trial court chooses to exercise the option of striking a party's defenses or counterclaims, it must do so after considering lesser sanctions." *Clawser v. Campbell*, 184 N.C. App. 526, 531, 646 S.E.2d 779, 783 (2007) (citing *In re Pedestrian Walkway Failure*, 173 N.C. App. 237, 251, 618 S.E.2d 819, 828 (2005) and *Goss v. Battle*, 111 N.C. App. 173, 176, 432 S.E.2d 156, 159 (1993)). A failure to consider lesser sanctions may constitute an abuse of discretion. However, formal findings of fact and conclusions of law stating that the trial court considered lesser sanctions are not required in order to sustain an order's validity in every instance. "[T]his Court will

affirm an order for sanctions where 'it may be inferred from the record that the trial court considered all available sanctions' and 'the sanctions imposed were appropriate in light of the party's actions in the case.' " *In re Pedestrian Walkway Failure*, 173 N.C. App. at 251, 618 S.E.2d at 828 (quoting *Hursey*, 121 N.C. App. at 179, 464 S.E.2d at 507) (alteration omitted).

In the instant case, it can be inferred from the record that the trial court considered lesser sanctions and that the sanctions imposed were appropriate. In its Motion to Show Cause to Avoid Contempt, GEA explicitly requested the lesser sanction of entry of default solely as to GEA's conversion claim. This was a conservative request. While the various computers at issue and the information contained therein were the subject of GEA's conversion claim, the hardware also contained information that was highly material to, and necessary for, the prosecution of GEA's additional claims. In addition, the actions taken by Luxury's agents and the attitude evinced by LeClair, apparently in high dudgeon, make more severe sanctions suitable and fitting. Accordingly, while GEA requested lesser sanctions, the trial court clearly considered GEA's request and nevertheless determined that more severe sanctions were warranted under the circumstances. We also note that the trial court gave Luxury the opportunity to avoid the sanctions altogether by complying with the terms of the 12 June Order within ten days.

Moreover, "it is generally the appellant's duty and responsibility to see that the record is in proper form and complete and this Court will not presume error by the trial court when none appears on the record to this Court." *King v. King*, 146 N.C. App. 442, 445-46, 552 S.E.2d 262, 265 (2001) (quotation marks and citation omitted). Instead, "[w]here the record is silent on a particular point, we presume that the trial court acted correctly." *Granville Med. Ctr. v. Tipton*, 160 N.C. App. 484, 488, 586 S.E.2d 791, 795 (2003) (citation omitted).

Here, Luxury has not provided this Court with a transcript of the hearing. Thus, not only may it be inferred from the record that the trial court considered lesser sanctions, but we may also "presume that the trial court acted correctly" where Luxury has failed to provide a transcript of the hearing. *E.g.*, *Clawser*, 184 N.C. App. at 531, 646 S.E.2d at 783 ("An examination of the transcript reveals that the trial court did not consider any lesser sanctions[.]).

*B.*

We next address Luxury's argument that the trial court erred in its 10 July Order when it found Luxury and Mr. LeClair in violation of the 12 June Order.

The 10 July Order found that

> Defendant LeClair has not produced his personal laptop computer described in [GEA's] Motion to Show Cause and Defendants LeClair and [Luxury] have not produced all backups and other computers and devices, if any, in either of their possession, custody or control. Accordingly, Defendants LeClair and [Luxury] are found to be in

> violation of this Court's June 12, 2017 Order mandating that they "shall make available for inspection the server, the accounting computer, any other computer hardware equipment which is the subject of this action, still existing, as well as all downloaded and stored contents and data from all computers which were destroyed or disposed of by Defendants. Unless otherwise agreed by the parties, this shall occur within twenty (20) days from May 18, 2017."

Luxury maintains that Mr. LeClair's personal laptop was not subject to GEA's motion to compel or the subsequent 12 June Order. Accordingly, Luxury argues that the trial court erred when it found Luxury to be in violation of the 12 June Order on those grounds. Luxury further asserts that the trial court erred when it found Luxury to be in violation of the 12 June Order because Luxury *had* produced everything described in that order. We find no such error.

Our review of the record suggests that the 12 June Order did in fact mandate the production of Mr. LeClair's personal laptop. The 10 May 2017 deposition testimony reveals that the 12 June Order's reference to the "equipment which is the subject of this action" not only meant the "Luxury-owned" computers that were removed from the office and still in existence, but also the computers that had been used in relation to Luxury's operations overall. This included the personal laptops of various employees, including Mr. LeClair. Moreover, after referencing the "equipment which is the subject of this action," the 12 June Order explicitly addressed the handling and protection of Mr. LeClair's personal information, thus making it clear that the order included Mr. LeClair's laptop. Accordingly, we are not persuaded

that the failure of the 12 June Order to specifically mention Mr. LeClair's laptop relieved Luxury of its production.

Nevertheless, Luxury unequivocally violated the provisions of the 12 June Order even assuming, *arguendo*, that Mr. LeClair's personal laptop was not subject to the Order. The trial court ordered that Luxury "shall make available for inspection the server[.]" Luxury insists that it complied with the order because it "produced the server." However, the production of the Server was useless, as its access required login credentials that Luxury maintained it could not provide. We conclude that because the 12 June Order required not only that Luxury produce the Server, but that it make the Server "*available for inspection,*" the trial court did not abuse its discretion when it concluded that Luxury violated the 12 June Order.

## C.

Next, Luxury contends that the trial court erred "by failing to impose less drastic sanctions, all available and all more appropriate, than stricken defenses and entry of default judgment." The essence of Luxury's argument is that the trial court abused its discretion because it imposed the sanctions without regard to Luxury's inability to provide the Server's login credentials or to Mr. LeClair's privacy interests in his personal laptop. These arguments are not persuasive.

*i. The Server*

Luxury first maintains that it "does not have the server password, as it repeatedly told the trial court, under oath, and demonstrated by its inability—not refusal—to provide it. The July 10 Order requires the impossible."

The trial court made the following finding pertaining to the Server in its 10 July Order:

> 1. The Court FINDS, pursuant to Defendant LeClair's deposition testimony and otherwise, that LeClair intentionally destroyed or physically disposed of computers and materials at issue in this case. On the basis of Defendant LeClair's destruction or physical disposal of certain computers and materials, the Court FINDS as not credible LeClair's assertion that he does not possess the password(s) and other credentials necessary to access [the Server]. Though the parties dispute ownership of the Server, the Server shall not be returned to [Luxury] unless provided for by further disposition of this Court.

The trial judge is the sole authority of the weight and credibility that should be given to the parties' testimony and evidence. *Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994).

> "Issues of witness credibility are to be resolved by the trial judge. It is clear beyond the need for multiple citation that the trial judge, sitting without a jury, has discretion as finder of fact with respect to the weight and credibility that attaches to the evidence." *Smithwick v. Frame*, 62 N.C. App. 387, 392, 303 S.E.2d 217, 221 (1983). "The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine *de novo* the weight and credibility to be given to evidence disclosed by the record

> on appeal." *Coble v. Coble*, 300 N.C. 708, 712-13, 268
> S.E.2d 185, 189 (1980).

*Id.* at 357, 446 S.E.2d at 25.

Despite Luxury's insistence, the trial court made clear that it did not find it credible that neither Mr. LeClair nor any other of Luxury's agents knew the login credentials to the Server. The trial court did not abuse its discretion simply because it declined to accept Luxury's allegations to the contrary. In that it was the province of the trial court to determine the credibility of Luxury's contentions on this point, we conclude that the trial court did not abuse its discretion when it ordered that Luxury be sanctioned if it did not provide the Server's login credentials.

Notwithstanding the trial court's discretion as to determinations of credibility, Luxury further argues that the trial court erred when it made any finding as to credibility. In support of this argument, Luxury cites *Lee v. Shor* for the proposition that "[i]t is well established that the court should not resolve an issue of credibility or conduct a 'trial by affidavits' at a hearing on a motion for summary judgment[.]" 10 N.C. App. 231, 235, 178 S.E.2d 101, 104 (1970). While the present case does not involve a motion for summary judgment, Luxury "submits that a ruling as to credibility in a dispositive context—either summary judgment or entry of default—is error[.]" We are not persuaded.

Not only has Luxury failed to provide this Court with authority to support the applicability of *Lee* to the present case, but we conclude that no such extension is

warranted under the circumstances. The issue at hand in the 10 July Order was whether or not to impose *sanctions*. In ruling on GEA's motion to show cause, the trial court was required to determine whether Luxury was truly incapable of complying with the 12 June Order or whether Luxury personnel had in fact misrepresented their lack of knowledge of the password to the Server. Therefore, credibility was not only relevant, but was itself in issue. Moreover, in *Lee*, we reversed the trial court's summary judgment order on the basis of the affidavits provided because "[a] careful examination of defendants' affidavits disclose[d] that . . . they do not cover all of the facts which would be material to a determination of the controversy and thus would not adequately support the motion." *Id.* at 236, 178 S.E.2d at 104. Here, however, Luxury personnel simply insisted that they did not know the Server's password. There was nothing further for the trial court to resolve other than whether that assertion was believable.

Accordingly, we find no error in the trial court's finding as to Mr. LeClair's credibility.

*ii. LeClair Laptop*

Additionally, Luxury argues that the trial court erred when it ordered sanctions against Luxury if it did not produce Mr. LeClair's personal laptop. Luxury maintains that this requirement is "a violation of Mr. LeClair's right of privacy," and

that such a violation could have been easily avoided by an *in camera* review of the laptop, which the trial court refused to conduct.

Despite the personal nature of certain information, "[u]nder the rules of discovery . . . , a party may obtain discovery concerning any unprivileged matter as long as it is relevant to the pending action and is reasonably calculated to lead to the discovery of admissible evidence." *Spangler v. Olchowski*, 187 N.C. App. 684, 693, 654 S.E.2d 507, 514 (2007) (citation omitted). Whether to conduct an *in camera* inspection is within the trial court's discretion. *Midgett v. Crystal Dawn Corp.*, 58 N.C. App. 734, 736, 294 S.E.2d 386, 387 (1982) (citations omitted).

In the instant case, while Mr. LeClair's personal laptop may indeed include, as Luxury calls it, "needless" personal information, we find sufficient evidence in the record to suggest that Mr. LeClair's personal laptop also contained information related to GEA's pending claims and would lead to the discovery of admissible evidence.

The relevant information that could have been found on Mr. LeClair's laptop was not limited to Luxury's or GEA's business matters. For instance, GEA's harassment claim contained allegations concerning Mr. LeClair's personal Facebook postings and defamatory e-mails sent to the *Times* and *The Wall Street Journal*. Thus we are not persuaded by Luxury's claim that any personal information on the laptop would have been entirely irrelevant to GEA's pending actions. In any event, the

possibility of unveiling "purely personal" information would have been outweighed by the potential for uncovering material that was relevant. Mr. LeClair testified that he used his personal laptop for Luxury's business matters. Additionally, largely at issue in GEA's claims—including its accounting claim—was the housing of stolen intellectual property. There is no indication that the housing of any such stolen property would be limited solely to the business computers.

Furthermore, the extent of any harm caused by the revelation of personal information would have been circumscribed by the trial court's 12 June Order, which explicitly set the bounds for the use of Mr. LeClair's personal information. That order stated, in pertinent part, that

> [a]ny information, content or data obtained from the inspection [that] is Jeremy LeClair's personal information . . . shall be used solely for purposes of this case . . . and disclosed only (a) to the parties, their counsel, their experts or trial witnesses, (b) at trial as necessary, or (c) in response to any statute or court/governmental order. The [personal] [i]nformation will be returned to Jeremy LeClair within fourteen (14) days of final disposition . . . and not retained by the Plaintiffs.

(emphasis added).

This Court is also concerned by the attitude exhibited by Mr. LeClair. At his deposition, Mr. LeClair repeatedly stated that he would refuse to produce his personal laptop, and continued to so refuse even after the court ordered him to do so in its 10 July Order, thus showing his contempt for the discovery process overall.

Accordingly, we conclude that the trial court did not abuse its discretion when it ordered that Luxury be sanctioned unless Mr. LeClair produced his personal laptop for inspection.

We are also not convinced that the trial court abused its discretion when it declined to conduct an *in camera* review of the laptop. On 3 July 2017, Luxury filed a "Time-Sensitive Motion For *In Camera* Review And Request For Telephone Hearing." The motion requested that the *in camera* review be conducted prior to 10 July 2017, which was just seven days later. Luxury in essence asked the trial judge to clear his schedule and sort through the laptop's extensive supply of files in order to determine which information was and was not relevant to the pending claims. The trial court did not abuse its discretion when it refused to do so, particularly given the expedited nature of the request and the privacy protections that the trial court afforded to Mr. LeClair in its 12 June Order. Luxury's motion for *in camera* review should have been filed shortly after the *initial* discovery request, on 1 March 2017, or at the latest, after the 12 June order, rather than on 3 July 2017, after the 23 June 2017 motion to show cause was filed by GEA.

Accordingly, we conclude that the trial court did not err when it ordered the production of Mr. LeClair's personal laptop and denied Luxury's motion for a time-sensitive *in camera* review.

* * *

In view of the above, we conclude that the trial court did not err when it struck Luxury's defenses to GEA's counterclaims, entered default against Luxury, and denied Luxury's Request for Reconsideration. As discussed in Section II *supra*, a determination of the appropriateness of particular sanctions is within the sound discretion of the trial judge. "Striking of defenses or counterclaims is an appropriate remedy, and is within the province of the trial court." *Clawser*, 184 N.C. App. at 531, 646 S.E.2d at 783 (citing *Jones v. GMRI, Inc.*, 144 N.C. App. 558, 565, 551 S.E.2d 867, 872 (2001)). Such sanctions "are well within the court's discretion in cases involving an abuse of discovery rules by one party." *Kewaunee Sci. Corp. v. Eastern Sci. Prods.*, 122 N.C. App. 734, 738, 471 S.E.2d 451, 453 (1996) (citing *Roane-Barker*, 99 N.C. App. at 36, 392 S.E.2d at 667). In the instant case, we find no such abuse of discretion.

**Conclusion**

For the reasons contained herein, the trial court's 10 July 2017 order is AFFIRMED.

Judges HUNTER, JR. and DIETZ concur.